JAMES McCAMANT, Appellant, *v.* HENRY L. PATTERSON *et al.*, Respondents.

1. *Lands and Land Titles — New Madrid Locations* —The act of Congress of February 13, 1815, for the relief of the inhabitants of the county of New Madrid who suffered by earthquakes, conferred a right of location upon those only who were owners of the injured lands at the date of the act, or who subsequently became the legal representatives of such owners by descent, purchase, or operation of law. The right of location did not accrue to one who had been the owner if he had parted with his title prior to the passage of the act; and it was not necessary that the derivative title to the land giving the right of location should be proved by legal conveyances duly recorded. The former owners of the injured lands, their heirs, or their assignees, by conveyances subsequent to the act of Congress, had no concern with the evidence by which the fact of ownership as between the parties to the prior transfers of title of ownership was proved, further than that they were at liberty to question the competency and sufficiency of the evidence when produced, to prove the fact.

2. *Conveyances—Recording—New Madrid Locations.*—The derivation of title from the original grantee down to the passage of the act of Congress of February 13, 1815, and the rights of persons claiming by recorded or unrecorded deeds from the same grantor, will be determined by the registry laws in force at the time, when ascertaining the ownership of the injured lands at the date of the act.

3. *Conveyances—Recording—Subsequent Purchasers.*—By the act of 1804 (Ter. Laws, p. 46, § 8) unrecorded deeds were valid as against the grantor, his

McCamant v. Patterson et al.

heirs or devisees. By the act of 1825 (R. C. 1825, p. 221. § 14) the recording of a deed imparted notice to all subsequent purchasers and mortgagees, but an unrecorded deed was void except between the parties thereto and those having actual notice thereof. The recording acts relate only to purchasers and mortgagees for value, claiming title under the same grantor. A deed conveys the title and estate of the grantor, and he has no longer any title or interest in the land to descend to his heirs. The deed of the grantor, although not recorded, is good and valid against himself, his heirs, and all persons claiming in privity under them; the heirs have no interest or estate to convey.

4. *Conveyances—Recording—Judgment—Evidence.*—A decree establishing the execution of a deed which had been lost, does not operate as a conveyance, but establishes the fact that a deed was executed; and is binding upon all parties and upon all privies in estate, blood or law, although not recorded.

## *Appeal from St. Louis Land Court.*

This was a claim to land by virtue of a New Madrid certificate (No. 130) and a patent issued July 23, 1849, for the land upon which said certificate was located. The patent was to Peter Tesson or his legal representatives.

The title was traced by both parties to John Butler in 1804, and the plaintiff and appellant traced the title to him from John Butler's heirs by deeds dated November, 1851, and March, 1852, and recorded about same date; also title to himself of a considerable portion of the land from Robert McCoy's heirs and devisees from 1841 to 1850.

Defendant and appellee then read a deed from John Butler to Robert McCoy of same land in New Madrid, dated January 11, 1812, and recorded November 8, 1852; a power of attorney from one Mathias Bilsen to Charles Lucas, dated June 15, 1815, to locate said New Madrid certificate; also deed from said Bilsen to said Lucas, dated June 4, 1815, of same land; also certificate of Recorder Bates, dated November 4, 1815, authorizing the location of said certificate No. 130 in name of Peter Tesson or his legal representatives; also U. S. survey 2506 of said location, and return of Surveyor General, dated June 26, 1847.

The location was made by said Lucas in the usual form, and defendants also gave evidence deriving title from said Lucas to themselves. Also produced and offered in evidence

the record of a suit in chancery, in New Madrid county, of Robert McCoy against John Butler; suit commenced October 10, 1831, which was revived against the heirs, and judgment rendered in ———, 18—. This was objected to by plaintiff's counsel as acts between other parties, and that declarations by said McCoy in his bill or petition in the case were not evidence of conveyance by him of said land to said Bilsen. The court admitted the whole record, and plaintiff excepted.

Defendants also introduced record of case of said McCoy against said Bilsen, in same county and about same time; and plaintiff's counsel objected to it for same reasons, and objections were overruled by court. Plaintiff excepted.

The evidence of the conveyance of the land in question from McCoy to Bilsen was shown by these records and decrees, of which the plaintiff had no actual notice. The deed of Bilsen to Lucas contained a statement that the land was the same as Bilsen had purchased of McCoy.

The court refused numerous instructions asked by plaintiff, and only gave the following for plaintiff:

1. The recitals in the deed of Bilsen to Lucas are not evidence against the plaintiff of the facts stated in such recitals.

The court then gave the following instruction for the defendant:

1. If the jury find from the evidence that in 1812 John Butler conveyed the Peter Tesson lot to Robert McCoy, and that in 1812 said Robert McCoy conveyed the same to Mathias Bilsen, and that the certificate of New Madrid location did not issue till 1815, then neither John Butler nor his heirs, nor Robert McCoy nor his heirs, could make any conveyance affecting the title to the land in controversy at any time after the issuing of said certificate, and any such deed would be simply void; and it is immaterial in law whether the purchaser under any such deed from John Butler or McCoy, or the heirs of either, had or had not notice of said conveyance, or either of them, by Butler to McCoy or McCoy to Bilsen.

*Hill & Jewett,* for appellant.

I. The court, by admitting such records as evidence, and refusing the 10th instruction, took distinctly the ground that the statements of McCoy in said records, though unknown to the plaintiff, were competent evidence to prove that Robert McCoy conveyed the land in New Madrid to Bilsen in 1812, notwithstanding these declarations were made twenty years after McCoy alleges he had sold the land and when he was not in possession of the land ; and this against the plaintiff, who, as the case stands, was a purchaser for a valuable consideration without notice, and does not claim the land solely under McCoy but also under Butler, and against the deed from Butler to McCoy, not known of or recorded till after the plaintiff had purchased the land. The decree in the case of McCoy v. Butler was of no effect, and not notice unless recorded within one year. It never was recorded. R. C. of 1825 in force at that time.

The admission of the statements of McCoy under such circumstances, to prove a conveyance from him to Bilsen in 1812, is so plainly against every rule of law applicable to the case, that no authority need be cited beyond the elementary books on hearsay testimony. This one statement of McCoy in his bill is the only evidence before the jury of any deed from McCoy to Bilsen, and of course the only evidence that defendants had any title. It is not denied but the plaintiff showed title to all the land from Butler's heirs and grantees, but also title to a great part of it from the heirs of McCoy.

II. The instruction given for the defendants was based upon the doctrine in the case of Page v. Hill, 11 Mo. 149. That case completely overturns the whole registry law of the State. That law (R. C. 1855, p. 364, § 42), as also the statutes of 1835 and 1845, say that no such instrument (a deed of land) in writing shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the recorder for record."

McCamant v. Patterson et al.

In Beattie v. Butler, 21 Mo. 313, it is decided that nothing short of actual notice will defeat a subsequent purchaser as against a prior unrecorded deed; therefore any deed from Butler to McCoy, or from McCoy to Butler, if any ever such existed, are void by statute until plaintiff is proved to have had notice. The decree in case of McCoy v. Butler was of no force as against plaintiff as the decree was not recorded; when plaintiff, therefore, bought of F. C. Butler in 1851, the record showed a good title in F. C. Butler—put into him in 1851; that is, of the New Madrid lot.

The Statutes of this State on Ejectment, p. 692, §§ 11 & 12, authorize the inquiry as to who was the owner of the New Madrid land, and declares that the one entitled to the New Madrid land shall be the owner of the land located in lieu thereof. How can it be determined who was or is the owner of the New Madrid land unless the registry law of the State is to be the rule of inquiry?

The case of Page v. Hill, 11 Mo., relied on by defendants, and the instructions given by the Land Court in this case, have both been overturned by the case of Lessieur v. Price, 12 How. (U. S.) 59. The case of Page v. Hill and the instructions say that no conveyance of the New Madrid land after the issuing or location of the certificate can pass any title, because the New Madrid land has then vested in the United States, and the located land in the man who then had a title, though by unrecorded deeds, to the New Madrid lot. The Supreme Court of the United States says that the title does not pass out of the United States till the survey of the located land is returned to the U. States Recorder's office. Therefore in this case there was no exchange of title between the United States and the owner of the New Madrid lot till January 26, 1847. Till that time, therefore, the title to the New Madrid lot would pass by deed, and would pass by the deed of those having the title, to a purchaser, without notice of unrecorded deeds or unrecorded decrees. On the 25th of January, 1847, then, any purchaser of F. C. Butler without notice of the McCoy deed or decree would

have got a good title to the New Madrid lot. There is no reason, in the circumstances of the case, why the title to a New Madrid lot and the land substituted for it should not be investigated by the same rules of statutory law that any other title is. The whole force of the case of 11 Mo. is however destroyed by Lessieur v. Price, before cited.

No presumption of a deed is ever admitted except in favor of some one in possession of the lot to which the deed is to apply. There is no such possession in this case.

If F. C. Butler could have conveyed a good title on the 25th of January, 1847, to the New Madrid lot, what sense or reason is there in saying that he could not on the 27th of the same month, when no change had taken place in the record and nothing done to put an innocent purchaser on his guard?

*Glover & Shepley*, for respondents.

I. The bounty conferred by the act of Congress entitled "An act for the relief of the inhabitants of the late county of New Madrid, in the Missouri Territory, who suffered by earthquakes," approved February 13, 1815 (3 U. S. Stat. at large, p. 211), passed to the owner of the injured land at the date of the certificate of the new location.

II. No former owner took anything by said act; now one may be owner of land by virtue of an unrecorded deed. It is the conveyance of the land, and not the recording of the deed, that passes title. The record shows that in 1812, by chain of deeds from Tesson, the title to the village lot had passed to Mathias Bilsen, and on the 4th of June, 1815, Bilsen conveyed to Lucas, though the certificate of new location did not issue till November 24, 1815; so that the grant was to Lucas, and neither Michel, Butler, McCoy nor Bilsen ever owned any interest in the newly located land—9 Mo. 114; 10 Mo. 252; 11 Mo. 149. The bill of McCoy was evidence— 1 Greenl Ev. p. 255, § 212. Lucas acted upon this admission and took possession of the property—30 Mo. 272–8. Posses-

McCamant v. Patterson et al.

sion and lapse of time authorized reading the bill and recitals in Bilsen's deed—27 Mo. 452.

III. Plaintiff McCamant insists that he is an innocent purchaser for value without notice, or claims under such a purchaser. The answer is, first, that McCamant had actual notice; second, that he only took such title as his vendors—made a *chancing* bargain, and took all risks. A deed conveying only what a grantor has, does not operate on land he has sold—20 Mo. 81; 3 How. (U. S.) 333, 410. A conveyance of the " right, title and interest" of a party is sufficient to pass the land if the grantor owns it; but it passes no estate not then possessed by the grantor—3 Wheat. 452; 14 id. 193; 9 Cow. 18; 10 Mo. 622; 27 Mo. 35; 28 Mo. 139; 1 Greenl. p. 34, § 27.

HOLMES, Judge, delivered the opinion of the court.

The case depends at last upon the correctness of the instruction which was given for the defendants. It goes upon the idea that the bounty of the act of Congress concerning New Madrid lands which had been injured by earthquakes was conferred upon those only who were the owners of the injured lands at the date of the act, or were their legal representatives afterwards by descent, by purchase, or by operation of law. We take this to have been the object and intent of the act. The former owners of the land had no interest in the matter whatever. The act of Congress was passed on the 17th day of February, 1815. The benefit of the act, whether it be called a donation or a proffered offer of barter and exchange, was conferred directly upon the owners at that date, or upon those holding under them as their legal representatives after that date. This ownership was to be proved as a fact existing, which fixed the line of representation, and ascertained the person who was entitled to the benefit of the act. It is not proved for the purpose of showing a title derived, as vested under the act, from the original grantee or confirmee of the lands which were after-

McCamant v. Patterson et al.

wards injured by earthquakes.  No right, title or benefit was vested in him by the act unless he was still the owner.

In Wear et al. v. Bryant, 5 Mo. 147, this subject was considered, and it was said—and, we think, very wisely said—that " the owner of the injured land was before the mind of the Legislature from the beginning to the end of the act; that the Recorder of land titles adopted a form of certificate of location in the name of the original patentee or confirmee of his legal representatives for the purpose of leaving it open to be ascertained judicially who was the person entitled to the benefit of the act as such owner; that this designation merely ascertained the line of representation in which that person was to be sought and found; that the question, ' who is the owner of the injured land?' must necessarily be determined by local laws—that is to say, the laws and jurisprudence then in force in this region of country; that the act of Congress never contemplated any person owning the located land but the person owning the injured land, and that a location in the name of the original grantee or his legal representatives gave the title to the located lands only to him who was the owner of the lands at the date of the location." These views would seem to be reasonable and sound.  The locator might be the person who was the owner of the injured lands at the date of the act, or any person holding under him as his legal representative; but it could not be any person who had formerly been the owner, but had parted with his title before the passage of the act.  If he had then ceased to be the owner, the act was not intended for his benefit, and conferred no right whatever upon him.

The certificate of location in this case was issued in 1815 in the name of Peter Tesson or his legal representatives, and a location was made and a patent issued in the same name. Tesson was the original confirmee of the land which had been conveyed to John Butler in 1804, and it was conveyed by Butler to Robert McCoy and by McCoy to Mathias Bilsen in 1812; and after the passage of the act of Congress, Bilsen and wife had conveyed the injured land to Charles Lucas by

deed duly executed, and recorded in June, 1815. At the date of the act, then, Mathias Bilsen was the owner of the injured land, and on him and those holding under him afterwards, only, was the benefit of the act conferred. No prior owner had any interest in the matter, nor any concern with it; nor would any conveyance which he could make have any effect or operation either upon the injured lands, or upon the right to locate other lands in lieu thereof. The question here is not of a derivation of title as such from the original grantor by recorded conveyances which might be notice to subsequent purchasers from the same grantor prior to the passage of the act, in which case the matter of notice might be important; but this inquiry concerns the fact of ownership at the date of the act of Congress, and the right of the owner to locate other lands in lieu of the injured land under that act. This right is given to him who was then the owner or to his legal representatives, and to none other. The line of representation prior to the act is deduced from the original confirmee of the land merely for the purpose of ascertaining as a matter of fact who was the person owning the injured land at the date of the act, and on whom or his legal representatives afterwards the benefit of the act was conferred, and to whose use and benefit the certificate of location and the patent issued in the name of such original grantee, or his legal representatives must be held to enure.

A part of the defendants' evidence which was adduced to establish this fact of ownership at the date of the act of Congress consisted in an unrecorded deed, and a record and decree in chancery upon a lost deed, setting up the deed and declaring the title transferred by the deed at its date in 1812. This unrecorded deed and the record and decree were competent evidence, and showed a title transferred as between the parties at the date of those deeds. If such were the fact it made Bilsen the owner of the injured lands, and brought him within the purview and bounty of the act of Congress; and that was a matter in which the former owners, Butler and McCoy, under whose heirs the plaintiff claims by subse-

quent conveyance, had no interest, privity or concern. Nor have these former owners, their heirs, or those holding under them by subsequent deeds made after the passage of the act, any concern with the evidence by which this fact of ownership at the date of the act is established as between the parties to the prior transfers of title, further than this, that they were at liberty to question in court the competency and sufficiency of the evidence when produced to prove the fact. The effect of this evidence was to show a title passed to Mathias Bilsen before the passage of the act. That the plaintiff had no notice of these deeds and records at the time when he afterwards purchased from the heirs of Butler and McCoy, or from those holding under them, was a matter of no importance. The plaintiff did not stand in the position of a *bona fide* purchaser for a valuable consideration without notice of a prior conveyance of the same land by the same grantor.

The plaintiff invokes the protection of the registry laws, and relies upon the case of Beattie v. Butler, 21 Mo. 313, on the subject of actual notice. The position here maintained is not in conflict with the laws governing the registration of deeds. Before these laws can have application it must appear that some real estate has existed to be conveyed, and has been conveyed, under them. The subject of controversy here is the land injured by earthquakes, and the right to locate other land in lieu thereof under the act of Congress. Before the injury by earthquakes and the passage of the act for the relief of the sufferers, this subject matter had no existence. The transfer of title to real estate will no doubt be governed by the laws of the State regulating conveyances which are at the time in force, and conveyances by the owner of the injured land after the passage of the act of Congress and before a location was made, or conveyances of the located lands after location was made, will be governed by the registry laws then in force in the same manner as other conveyances of real estate. And in respect of a derivation of title from the original grantor down to the owner at the pas-

sage of the act, the rights of persons claiming by recorded or unrecorded deeds from the same grantor would be determined by reference to the registry laws then in force, when ascertaining this line of representation and the fact of ownership of the injured lands at the date of the act.

The act of 1804 made conveyances "fraudulent and void against any subsequent purchaser or mortgagee for valuable consideration" unless recorded—1 Terr. Laws, p. 46, § 8. They were still valid against the grantor and his heirs or devisees, though not recorded. The law appears to have remained so till 1825, when recording was declared "to impart notice to all subsequent purchasers and mortgagees," and no deed was to be " valid and binding, except between the parties thereto and such as have actual notice thereof, until deposited for record"—R. C. 1825, p. 221, § 14. This provision has continued essentially the same to the present time. Under these laws, a conveyance unrecorded was good and passed the title as against the grantor and his heirs and devisees; and they were void only as against subsequent purchasers and mortgagees, without actual notice from the same grantors, whose deeds were first recorded—4 Kent's Com. 456 ; Vance v. McNairy, 3 Yerg. 171 ; Jackson v. Burgott, 10 J. R. 462 ; Lowry v. Williams, 13 Me. 281. These acts relate only to purchasers and mortgagees for value claiming title under the same grantor, and no other can dispute the validity of the unrecorded deed. The deed conveys all the title of the grantor, and he has no longer any interest' or estate in the land, and none can descend to his heirs, though a purchaser under the lien of a judgment against him might be protected as a purchaser—Davis v. Ownsby, 14 Mo. 170 ; Valentine v. Havener, 20 Mo. 133 ; Stillwell v. McDonald, (Oct. T. 1866). The plaintiff claims under deeds from the heirs of John Butler, who died long after this certificate of location was issued, and he had never made a second conveyance of the land to any other person for a valuable consideration. The unrecorded deed was good and valid against him and his heirs, and all persons holding in privity under

them. They had no interest or estate in the land, and nothing could pass by any deed they could make.

The same principles are to be applied to the conveyances from the heirs of Robert McCoy, under whom the plaintiff also claims. The deed from Robert McCoy to Bilsen, made in 1812, was unrecorded and was lost. The decree in chancery set up this deed and established the fact of its former existence and loss. It is said that this decree was never recorded in the office of the Recorder of deeds for the county. This is nothing to the purpose. The decree did not operate as a conveyance of title at that date. Its effect was to ascertain and establish the fact that this deed had existed, and that the title to this land had been conveyed by McCoy to Bilsen by deed unrecorded and lost in 1812. This decree was binding and conclusive upon the parties to the proceedings and on all persons claiming in privity under them, and all privies in estate, in blood, or in law, are estopped by the decree; and for this purpose it matters not that it was never recorded—1 Greenl. Ev. p. 523, §§ 528 & 541. It follows that Robert McCoy at the date of his decease, long afterwards, had no title whatever in this land, and none descended to his heirs; nor had he ever made a second conveyance to anybody else.

The result is that the plaintiff purchased land in which his grantors had no title, interest or estate, and has never owned any. He purchased by quit-claim deeds merely, which did not purport to convey anything more than the right, title and interest which the grantors then owned in the land, and that was nothing—Brown v. Jackson, 3 Wheat. 439; Oliver v. Pratt, 3 How. (U. S.) 410; Farrar v. Patton, 20 Mo. 81.

The instruction for the defendants being correct, it disposes of the whole case; and it will be unnecessary to consider the instructions which were refused for the plaintiff.

The judgment will be affirmed. The other judges concur.