Miller, J.
The evidence of title in the intervenor is as follows:
In 1853, Mary J. Holmes entered the land in controversy, receiving the usual certificate of entry therefor.
In January, 1856, she assigned this certificate to John C. Reed, the intervenor, the assignment being acknowledged, and her husband assenting thereto. Subsequently, the precise date is not shown by the evidence, but probably in 1856, Mary J. Holmes died intestate, leaving surviving her Joseph Holmes, her husband, and several children.
After Reed .obtained the assignment of the certificates of entry, he sent them to the land office, and the patents for the land, in the name of Mary J. Holmes, were sent to him, which he never delivered to her. Patents cannot be found, and the date of the same, and when received by Reed, are not definitely known. Reed sold the land to E. T. Gadd in 1856; but, after various conveyances, it was again reconveyed to him in 1869, pursuant to a contract made with him in 1865.
In 1859, Reed obtained a quitclaim deed to the land from Joseph Holmes. Mary J. Holmes being then dead, the deed from E. T. Gadd to Ambrose Soper was recorded May 6, 1847, but none other of the various conveyances connected with Reed’s title were recorded until after the purchase by the plaintiff.
The evidence of plaintiff’s title is as follows:
On the 11th day of May, 1865, after the death of Mary J. Holmes, Joseph (the husband) and the heirs of Mary *509 J'., conveyed the land in controversy to Wells Spicer, which conveyance was recorded June 10, 1865. On the 19th day of July, 1865, Wells Spicer conveyed the same land to the plaintiff, which conveyance was filed for record July 20, 1865.
The evidence shows that, at the time Wells Spicer purchased from the husband and heirs of Mary J. Holmes, deceased, he had knowledge of the assignment of the certificates of entry to Heed. But it also shows, and is admitted by appellant’s counsel, that McClure, at the time of his purchase from Spicer, had no knowledge of any claim of title adverse to that of Spicer, and that he purchased in good faith.
It also appears in evidence that, at the time Heed repurchased the land, he had actual as well as constructive notice of the plaintiff’s title.
The main and controlling question in this case is this: Will a person purchasing from the heirs in good faith, for a valuable consideration and without notice, be protected against a prior unrecorded deed from the ancestor; or, to state the question conversely, will John C. Heed, the intervenor, who purchased from Mary J. Holmes (but did not record the evidence of his title), hold the land in controversy as against McClure, who claims under a subsequent conveyance from the heirs of Mary J. Holmes without notice of any adverse title.
The question is a new one in this State, and the cases in other States involving it are not numerous nor are they in harmony with each other.
The cases holding that a purchaser from the heirs is not protected against a prior unrecorded deed of the ancestor are from Kentucky, Connecticut and Missouri.
The first case is Ralls v. Graham, 4 Mon. 120, which holds that deeds of conveyance not recorded in time are yet good against the grantor, his heirs and all volunteers under him.
*510 In Handcock v. Beverly, 6 B. Mon. 531, it was held, that “ a deed though unrecorded passes the whole title of the grantor, and none but bona- fide purchasers, without notice, or creditors, have any benefit from the failure-of the grantee to place the deed on record, and that a purchaser from the heir or devisee of the grantor is not protected.
In Hill v. Meeker, 24 Conn. 211, it is decided that, where the ancestor has conveyed, the deed is valid against a purchaser from the heirs at law, although such purchaser had no knowledge (by registry or otherwise) of the ancestor’s conveyance, and that the heirs take nothing by inheritance which they can convey.
The case of McCamant v. Patterson, 39 Mo. 100, holds that the heirs have nothing to convey after the ancestor has made a deed in his life-time, even if the deed is unrecorded, and that the purchaser from the ancestor holds in preference to the purchaser from the heir.
On the other hand, it is held in Pennsylvania and Illinois .that the term “ subsequent purchasers ” includes all purchasers, whether from the grantor in the unrecorded deed, or from the heirs of such grantor.
In Powers v. McFerren et ad., 2 Serg. & Rawle (Penn.), 44, which was an action between the holder of an unrecorded deed from the ancestor and a purchaser from the heir, the court say: “ The unrecorded deed was void, so far as concerned Robert Smith’s share of the inheritance, because Robert conveyed to a purchaser for a valuable consideration, which brings the ease within the intent of the act ” of the legislature. The provisions of the recording act referred to are substantially the same as ours, which are as .follows: “ No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration without notice, unless recorded in the office of the recorder of deeds of the county in which the land lies, as herein provided.” Rev. of 1860, § 2220.
*511 In the case of Kennedy et al. v. Northrup et al., 15 Ill. 148, after a review of the cases before cited, Caton, J., says: “ The supreme court of Pennsylvania held, under a statute like ours, that a deed from the heir should prevail over an unrecorded deed from the ancestor, and they place it upon the broad ground that the expression, “subsequent purchasers,” means subsequent purchasers from the heir, as well as from the original grantor himself.” “ After much reflection” (says the learned judge) “ I am satisfied that this is the true and proper construction of the statute. It meets the objects designed to be accomplished by the law, and is within the reason which gave rise to the enactment. It was the object of the legislature to make patent the titles to real estate, that purchasers might know what title they were acquiring. Where a deed is not recorded, the title is still apparently in the grantor, and the law authorizes purchasers who are ignorant of the conveyance to deal with him as the real owner. In case of his death, the heir becomes the apparent owner of the legal title, and it is equally important, and equally as just, that the public may be allowed to deal with him, as with the original grantor, if living.”
“This construction, too, is equally within the literal expression of the statute. The expression is, subsequent purchasers, but .it does not say purchasers from whom. That is left to construction. Some word must be supplied by intendment or construction, not for the purpose of extending the language in order to effectuate the objects of the law, but for the purpose of limiting the language so that it shall not go beyond the extent of the statute. The language itself does not limit 'the application to purchasers from one person more than another; but the manifest object of the law does limit it so as to exclude from its protection those who might purchase from strangers. Now the question is, shall we carry this restriction so far as to exclude all except purchasers *512 from the first grantor? To prescribe the extent of the limitation to be thus introduced into the act by construction, we-must loot to the object of the act, to the mischief to be prevented, and the protection or relief designed to be afforded to those for whose benefit the law was passed. We have seen that these considerations apply as forcibly to purchasers from heirs or devisees as to purchasers from the ancestor.”
We have thus quoted at some length the language of the supreme court of Illinois which we adopt as being more in accord with sound principles of construction, and with the spirit of our recording law.
The reason upon which the contrary doctrine has been based is, that the first grantor having passed the title to the land conveyed to his grantee by the delivery of the deed, the heir takes nothing by inheritance, and therefore can convey no title to his grantee.
In the absence of the recording act this would be true, so also it would be true that the ancestor, after having once conveyed, could not by a subsequent conveyance pass any title to his subsequent grantee. Hence the reasoning applies with equal force to a subsequent purchaser from the ancestor as it does to one from the heir.
The case of McCullough v. Eudaly, 3 Yearger, 346, decides where lands sold by an ancestor, by deed, which was not proved or registered as required by law, and the lands were after his death sold by the heir to purchasers without notice, that the latter purchasers were entitled to hold the lands.
We hold with the courts of Tennessee, Pennsylvania and Hlinois that the term “ subsequent purchasers ” in our recording act includes purchasers from the heir as well as purchasers from the ancestor. This holding being ■decisive of the case, the judgment of the district court is
Affirmed.