## J. C. RODGERS V. P. BURCHARD AND OTHERS.

1. An absolute deed to land, though unregistered, passes to the grantee the entire title of the grantor, and leaves nothing to descend to the heirs of the grantor; and therefore a subsequent purchaser from such heirs acquires nothing.

2. Mere laches of the grantee, or neglect to have his deed recorded, can never operate to revest the title in his grantor.

3. Though in this State a subsequent deed, made on a valuable consideration and without notice of a prior unregistered deed, will, if duly recorded, take precedence of the prior unregistered deed; yet this principle only prevails when both parties claim under the same grantor. And if one party claims from an heir, and the other from the ancestor of the heir, they do not claim under the same grantor.

4. A quit claim deed conveys only such right, title or interest as the grantor has at the time it is made; and a party claiming under such a deed cannot be deemed a *bona fide* purchaser of any greater interest than his grantor then had.

5. A quit claim deed cannot exclude the operation of a prior unregistered deed.

6. The rulings in Watkins v. Edwards, 23 Texas, 447, on the subject of innocent purchasers for value and without notice, are re-affirmed in the present case.

ERROR from Milam. Tried below before the Hon. R. E. B. Baylor.

This cause was tried in the district court in the year 1860. The material facts are so clearly stated in the opinion of this court, that nothing remains to be added respecting them.

A jury was waived in the court below, and the cause submitted to the court on the· facts as well as the law; and judgment was rendered for defendants, Burchard and others.

*Sayles & Bassetts*, for the plaintiff in error.—On the tenth of September, 1835, J. C. Gafford, from whom both parties deraign title, received a grant of a head-right league of land. On the twelfth of January, 1836, Gafford sold Steele one-half of the league. On the second of February, 1836, Steele sold the half league so purchased, to Burchard, the ancestor of the defendants.

In June, 1836, Gafford sold the northwest half of the league to Bacon. In May, 1843, one Hitchcock, as curator for Gafford, conveyed to one Henry, a judgment creditor of Gafford, the west half of the same league. These two conveyances were duly recorded, and apparently included the entire league, but there were in fact sixteen hundred acres not embraced in them.

Gafford, the original grantee, died in Arkansas in 1845 or 1846, and in September and October, 1858, Gafford's heirs conveyed to the appellant by deed, " all their right, title and interest " in the head-right of their ancestor.

The evidence shows that the deeds from Gafford to Steele, and

from Steele to Burchard, had never been recorded; that the land had not been rendered for taxes by the claimants under those deeds, and that the title of the defendants had never been heard of until after the sale to the appellant; that the heirs of Gafford had publicly offered the land for sale five or six years prior to the purchase by the appellant, and that persons were prevented from purchasing by the fact that the deed to Bacon and the deed to Hitchcock apparently included the whole league; that the appellant gave the Gafford heirs another tract of land, in exchange, that suited their purpose better than the tract sold by them, and was the best offer they received, after having offered the land for sale for five or six years, and advertising at the county seat of Milam county, and at several other places in the same county. Upon the foregoing state of facts judgment was rendered by the court below in favor of the defendants.

The following questions are presented by the record:

1. Are the conveyances from Gafford to Steele, and from Steele to Burchard, invalid as to subsequent purchasers by reason of their not having been recorded in accordance with the requirements of the registry law of 1836?

2. Can a *bona fide* purchaser, for value from the heirs, hold lands against a prior unrecorded deed of their ancestor?

3. Is one who holds under a quit claim deed a purchaser within the meaning of the statute?

The first question has been decided in the affirmative by the Supreme Court of this State, in the case of Watson v. Chalk, 11 Texas, 89, where it is held that a conveyance of land by public act, before a judge or notary, is included in the provisions of the act of December 20, 1836, and is required to be proved and recorded in the manner therein prescribed under pain of being supplanted by a subsequent conveyance to an innocent purchaser. The same doctrine is held in the case of Guilbeau v. Mays, 15 Texas, 413; and Wool v. Kenny, 25 Texas, and is now too well settled to be open for discussion.

2. Is a purchaser from an heir in a position to claim the protection of the statute against a prior unrecorded conveyance from the ancestor?

The fortieth section of the registry law (Paschal's Digest, 4983,) declares that "no deed, conveyance, lien, or other instrument of writing, shall take effect, as regards the rights and interests of third persons, until the same shall have been duly proven and presented to the court, as required by this act, for the recording of land titles."

Under our laws all the estate of a decedent vests, upon his death, immediately in his devisees or heirs at law, subject only to administration for the payment of debts. (Paschal's Digest, 1373; Bufford v. Holleman, 10 Texas, 575; Blair v. Cisneros, 10 Texas, 40; Chubb v. Johnson, 11 Texas, 475.) The heir, upon the death of the ancestor, is at once clothed with his apparent title to property, and third parties may deal with him as they could have dealt with the ancestor.

It is insisted by the appellees, that as the ancestor had previously sold the land, that the title to it did not descend to the heir, and as his title is by descent he could convey no greater title than he acquired. But this argument gives effect to the prior unregistered conveyance, which the statute declares shall have no effect as regards the interests and rights of third parties. It will not be questioned that an heir could make a valid conveyance of lands acquired by descent. While as against himself an unrecorded deed would have effect, because he is privy in estate, it can have no effect as to third parties dealing with him in the character of heir, and as to their interests and rights, the conveyance is as if it had never been made. The policy of the registration law is to deal with the apparent title; for the purpose of preventing fraud, it requires the grantee in every deed and conveyance of lands to place his legal title upon record, and as a penalty for his neglect to do so, declares that the legal title shall

have no effect against the apparent title, so far as the interests and rights of third parties are concerned.

The vendor by his private deed, although not registered, had parted with the legal title, yet as to third parties he holds the apparent title, and as to them the unrecorded deed will have no effect. If the ancestor has parted with the legal title, the apparent title is not divested, because the deed is not recorded, and the apparent title vests in the heir, because as to third parties dealing with him the unrecorded deed can have no effect.

It has been held by the Supreme Court of Kentucky, in the case of Rolls v. Graham, 4 Munroe, 120, and Hancock v. Beverley's heirs, 6 B. Munroe, 531, that under the registration law of that State, which declared an unrecorded deed invalid as to creditors and purchasers, that a purchaser from the heir was not within the statute, but the decision is based expressly upon the peculiar wording of the statute of that State.

In Tennessee, upon a statute somewhat similar, the court arrived at a contrary conclusion, and held that where lands were sold by the ancestor, by deed, which was not proved or recorded as required by law, and were sold again by the heir, after the death of the ancestor, to persons without notice, that the latter purchasers took a good title. Mr. Justice Green, in delivering the opinion of this says, "It is immaterial whether the purchaser holds under the ancestor or the heir. The estate is thrown upon the heir with all the rights the ancestor enjoyed, and subject to all the encumbrances he had created on it. The registry acts are intended for the protection of the community from impositions and frauds. If a purchaser who is not in possession of the land, may keep his deed in his pocket fifteen years, concealed from the world, and then produce it, and overreach all other deeds which in the meantime may have been made for the same land, no man would be safe in the purchase of an estate. The mischief would equally exist, whether the ancestor or heir continue the apparent legal owner of an estate

which had been sold, as subsequent dealers would as readily pur-
chase of the heir as of the ancestor, and the heir would be much
more apt to sell, having possibly no knowledge of any previous sale
by the ancestor, than the ancestor, knowing he had parted with his
estate, would undertake to sell it again. All the reasons, there-
fore, why a deed should be so registered, exist in such a case as
the one before us, as exist in any other, and it must be concluded,
therefore, that the saving in the statute is intended to apply to it."
(McCulloch v. Endaly, Yerg., 346.)

The reasoning of the court in the case just cited, applies with
peculiar force to the case at bar arising under our statute.

The deed under which the heirs of Burchard claim was executed
in 1836, twenty-two years before the conveyance to the plaintiff.
During that long interval of time, it was not placed upon the
record; the claim of the Burchard heirs had never been heard of
by any of the witnesses, one of whom had been tax collector for
eight years, and another clerk of the district court from 1846 to
1852, and still another who had resided in the county ever since
its organization. The land had never been rendered for taxes by
the pretended owners, who, during the five or six years it was
offered for sale, in no way made their claim known. The heirs
came from a distant State, and on examination, find two deeds
upon the record which apparently covered the whole land. The
existence of these deeds, not only prevented the sale of the land,
but accounts for its not being returned for taxes by the heirs of
Gafford, who are shown to have been ignorant of the extent of the
title.

If this deed, which had been dormant for twenty-two years,
could have had no effect against a purchaser from the ancestor, still
less ought it to have effect against a purchaser from the heirs, who
were in ignorance of the prior sale. And the statute does not, as
the Tennessee and Kentucky statutes did, designate any particular
class of persons as to whom it should have no affect, but declares

that no deed shall take effect, as regards the interests and rights of third persons, until it shall have been duly proven and presented for record.

If a prior unrecorded conveyance can defeat a sale by an heir to a third person, then a deed, although not recorded, does take effect as regards the interests and rights of third persons. In the absence of this conveyance the purchaser would undoubtedly take a good title, and it is relied upon to defeat his rights, by showing that the estate of the ancestor had been previously sold, and did not therefore descend to the heir; in other words, it is insisted that such a deed shall take effect against the purchaser from the heirs, contrary to the literal import of the words of the statute.

Does the fact that the sale is by a quit claim deed or by a release of all the right, title and interest of the vendor, take the case out of the statute? Under our law no form of words is necessary to transfer an estate in fee simple; any conveyance is sufficient which shows the intention of the vendor to pass his title. (Paschal's Digest, 999–1000.)

There can be no difference between a conveyance of a tract of land by metes and bounds, and a conveyance of all the right, title and interest of the grantor in the same tract; it is the title of vendor which passes, and his purpose to convey is equally shown by either mode.

In Peck v. Hensley, 20 Texas, 673, the deed upon which the action was brought was a conveyance of the vendor's right, title, claim and demand to the land, and the only question upon the deed was whether the covenants amounted to a general warranty; and it was clearly intimated as the opinion of the court that the deed was not only effectual to pass the title, but also contained a covenant of general warranty. The question in the case at bar is; did the apparent title, vested in the heirs of Gafford, pass by a conveyance of all their right, title and interest in the land described?

XXXIV—28

If in the absence of a prior conveyance, it would have been suffi-cient to pass the title—if under any circumstances, it would have operated as a conveyance—then it will stand as such against a prior unregistered deed, because, under the statute, such a deed can have no effect as regards the interests and rights of third par-ties. When the interests and rights of third parties are brought in question, an unrecorded deed is to be disregarded. It has no effect.

In Dikes v. Miller, 24 Texas, 424, the court say that the grantee, in a quit claim deed, takes the risk of the title. What does the expression mean? Simply, if the title fails, he has no recourse against his vendor. And, we may infer from this case, that a quit claim deed will pass the title. True, it is at the ven-dee's risk, but that title, perilous as it may be, cannot be defeated by an unregistered deed, because such a deed can have no effect as regards the interests and rights of third persons.

The case of Brown v. Jackson, 3 Wheat., 448, is relied upon as establishing the proposition that a quit claim deed will not operate to defeat a prior unregistered conveyance, but the decision in that case was based entirely upon the phraseology of the deed, which clearly showed that it was not the intention of the grantor to convey certain lands previously sold by him.

In Blanchard v. Brooks, 12 Pick., 48, the question was, whether a contingent estate, which vested in the grantor after the deed was executed, was conveyed thereby, and the court held that a deed conveying all the right, title and interest of the grantor, only conveyed the vested interest which he then had, and that he was not thereby estopped to claim the contingent interest when it became vested in him by the happening of the contingency.

Both of these cases establish the proposition that a quit claim deed, or a release of the grantor's interest, is sufficient to vest in his vendee whatever title the grantor may have, and in a contest under such a conveyance, affecting the interests or rights of a third

person, an unrecorded deed, although prior in time, will have no standing; it has no effect, and cannot render ineffectual a conveyance which otherwise would have been valid.

This question is, we think, fully settled in favor of the appellant by the decisions of this court. In Ayres v. Duprey, 27 Texas, it is held that a purchaser at a sale under an execution is as fully within the protection of registration laws as those who claim by an immediate conveyance, and that a purchaser, under such a sale, would hold the land against a prior purchaser whose deed was unrecorded. The sheriff sells only the interest of the judgment debtor, and conveys his title and no more. An administrator sells only such title as his intestate had, and to such sales the rule of *caveat emptor* applies. The purchaser takes the risk of the title. (Lynch v. Baxter, 4 Texas, 431; Thompson v. Munger, 15 Texas, 523; Walton v. Reager, 20 Texas, 103.) If the legal title is in the intestate, the purchaser is not affected by any secret trust between the intestate and a third person, of which he had no notice, although the administrator may have had notice. (Love v. Berry, 22 Texas, 371.)

The principle established by the case of Ayres v. Duprey, and Love v. Berry, is that a conveyance of the interest of the legal owner of the estate sold, is within the protection of the registration laws, and that an unrecorded deed can have no effect as regards the interests and rights of third parties holding under such a conveyance.

In the case at bar the vendor, Gafford, was not divested of his apparent legal title, by his prior unrecorded deed, and third parties had the right to regard him as the true owner of the land—his heirs acquired by descent his apparent legal title, and third persons could regard them as the true owners of the land, they holding all the title which was vested in their ancestor. In conveying their right, title and interest, they conveyed their apparent title, which, in the hands of a third person, could not be affected by an unrecorded deed.

The application of the statutory rule works no hardship in the present case. The appellees might at any time within twenty-two years have placed their deed upon record, or by rendering the land for taxes, have given some notoriety to their claim.

The appellant acted in perfect good faith. He gave in exchange lands which suited the purpose of the heirs, and better than any offer they had received, although the lands had been offered for sale for five or six years. The records showed deeds covering all but 1600 acres of the league; and these recorded claims were the only two known to the tax collector, clerk of the district court, and other old citizens. If the first purchaser who had kept his deed in his pocket for twenty-two years, who was not in possession, who had concealed his claim from the world, by failing to do what the law made it his imperative duty to do, can now produce it and overreach all other deeds which have been made for the same land, no man would be safe in the purchase of an estate; the mischief which the statute intended to prevent would be increased. The ancestor, knowing he had parted with his estate, would seldom undertake to sell it a second time; but the heir, having no knowledge of the previous sale, would be much more apt to sell again.

*Hancock & West*, for the defendants in error, filed a brief and argument characterized by their usual ability and research.

WALKER, J.—This was an action of trespass to try title, brought by appellant against the appellees.

It appears that in September, 1835, one J. C. Gafford obtained a headright grant of a league of land from the government of Coahuila and Texas.

On the twelfth of January, 1836, he conveyed to William H. Steele one-half of the league, and on the second of February of the same year Steele sold and conveyed the half league to A. F. Burchard, the ancestor of the appellees. Neither of these deeds were recorded.

J. C. Gafford, in the same year, sold the northwest half of his headright league to Sumner Bacon, which deed was recorded.

In May, 1843, the west half of the league was conveyed by one Hitchcock, as curator for Gafford, under a decree of court, to one Henry; which deed was also recorded.

J. C. Gafford died in 1845 or 1846. In 1858 the heirs of J. C. Gafford conveyed by a quit claim deed all their "right, title and interest" in the headright league to the appellant Rodgers.

There are other facts contained in the record which it is not deemed necessary to notice.

The deed from J. C. Gafford to Wm. H. Steele divested Gafford of all the title he had in the land which was conveyed by it, and although the deed was never recorded, he had no fee remaining in the land, and none could descend to his heirs at his death; and a subsequent purchaser from the heirs could acquire no further or other interest in the land than was possessed by his grantors.

It follows that the deed from the heirs of J. C. Gafford to the appellant Rodgers conveyed nothing, for they had nothing to convey.

There is, perhaps, no instance found where any respectable court has held it possible for an estate fairly sold and paid for, to revert to the grantor from the mere laches or neglect of the grantee in having his deed recorded. It is held in this State that a subsequent deed, for a valuable consideration paid, and without notice, which has been duly recorded, shall take precedence of a prior unrecorded deed. (See Watkins v. Edwards *et al.*, 23 Texas, 443.)

But in this instance both parties claim from the same grantor; and the last purchaser being innocent of fraud, the equities are equal, and then equity rewards the diligent and careful man. (See McCannot v. Patterson, 39 Mo., 110.) The court decide in a case similar to the one at bar, that under the registry laws, which are similar to our own, "an unrecorded deed was good to pass the title as against the grantor and his heirs, and would be

void only as against subsequent purchasers without notice, from the same grantors."

By the rule in Shelly's case, which is recognized as the law in Texas, " a deed to A. B. and his heirs vests the fee in A. B.; and if A. B. sells the estate, he sells that which belongs to him and his heirs, unless, by the terms of his deed, he leaves the fee to vest as an estate in remainder to his heirs or to any other remainder man." There are manifestly good reasons for this rule of law, and especially do they apply where the alienation of estates is entirely free, and there are no forced heirships. (See 4 vol. Kent's Commentaries, 456; Jackson v. Burgott, 10 John., 462.) An unrecorded deed conveys all the title of the grantor, and he has no longer any interest in the estate; nor can any interest descend to his heirs. (Davis v. Ousley, 14 Missouri, 170; Valentine v. Havnor, 20 Missouri, 133; Hill v. Meeker, 24 Connecticut, 211; Whittington v. Wright, 9 Georgia, 23.)

The deed from the heirs of Gafford to Rodgers was a quit claim deed, and could only convey such interest as they had the time of making the deed, and they had none. (See Bragg v. Paulk, 42 Maine, 517.) The court here say, " their deed gave them the right, title and interest of their grantor, and they can only be regarded as purchasers, for a valuable consideration, of such right, title and interest."

A quit claim, or deed of release of all one's right, title and interest, purports to convey, and does convey, no more than the present interest of the grantor; and does not operate to pass an interest such as may afterwards vest. (Morse v. Godfrey, 3 Story's C. C. Rep., 365; Van Rensalaer v. Kerney, 11 Howard, 322.)

" A deed which simply purports to pass the right, title and interest of the grantor will not exclude the operation of a prior unregistered mortgage." (42 Maine, 502.)

" To enlarge the interest by construction would be to make a different contract from that which the parties have entered into;

would be, by judicial interpretation, contrary to the face of the deed and the facts on which it is founded, to pass the entire estate, by investing it with the consequences of a fraudulent sale of the whole." "The case of Oliver v. Piatt, 3 How., U. S. 410, which is cited with approval in 11 Alabama, 1067, fully sustains us in the position, that the bank, holding a mere quit claim deed, cannot be regarded as a *bona fide* purchaser for a valuable consideration, without notice." (Smith's heirs v. Bank of Mobile, 21 Alabama, 124; see Farrer, v. Patton, 20 Missouri, 81.)

A purchaser at a judicial sale (as an execution, administrator's sale, etc.,) takes only such interest as the debtor or decedent actually had. (Dwight v. Newell, 3 Comstock N. Y. R., 185; 4 Watts, 473; Baldwin v. Osterman, 6 Wallace U. S., 117–119.)

Do these parties come within the strict rules governing the plea of innocent purchasers?

The appellant's pleadings clearly are insufficient when tested by the following authorities: See Story's Eq. Pleadings, § 805, Redfield's edition; Hill v. Trustees, Mar., 512, 514; 9 Vesey 32; 1 Verm., 246. In Watkins v. Edwards, 23 Texas, 447, which is the leading case in our Reports on the subject, the court say that a party who desires the benefits accorded to innocent purchasers, must show, first, that he was a *bona fide* purchaser; second, that he purchased without notice, actual or constructive; third, that he paid the purchase money, and this he must show independent of any recital in his deed.

It is shown by the evidence that the land in controversy is of great value. The witnesses differ in their estimates from ten thousand to forty thousand dollars.

It is only claimed that the heirs of Gafford received for their quit claim deed about six hundred acres of post oak land, worth only about one dollar per acre; and it is not shown by any proper evidence in this case that the post oak land was ever deeded to them.

For the reasons given the judgment of the district court is affirmed.

Affirmed.