### G. W. HUYLER ET AL. V. E. H. DAHONEY, ADM'R.

1. VERDICT—PRACTICE.—In a suit to establish ownership in certain promissory notes, and to enforce the vendor's lien upon land for which they were executed, in which suit a remote purchaser is made party only for the purpose of reaching the land, but who defended, claiming as an innocent purchaser, the verdict not ascertaining that the purchaser had notice, or otherwise passing upon his right, it was error to render judgment against such purchaser.

2. SAME.—See verdict held insufficient.

3. BONA-FIDE PURCHASER—PART PAYMENT.—If at the time of a cash payment of part of the purchase-money, the purchaser was en-

titled to protection as an innocent purchaser had the entire pur-
chase-money been paid, he is entitled to protection to the extent of
the payment so made.

4. NEGOTIABLE NOTES AS COLLATERAL SECURITY—ESTATES.—When
negotiable notes, payable to bearer, are deposited as collateral secu-
rity for a debt, the creditor is not a mere mortgagee or lien holder,
who, in case of the death of his debtor, must prove up such debt in
the Probate Court. He may, after his debt is due, collect and apply
the proceeds to his debt.

5. SAME.—If such notes are uncollectible, and the creditor be driven to
treat them as mere personal property pledged to secure the debt,
and to invoke the aid of the courts to realize upon the security, then
the matter might come within the reach of the Probate laws, and
the creditor be compelled to prove his claim, and the securities be
administered under the Probate law.

6. PLEADING.—An answer resisting a suit for the possession of negotia-
ble notes in possession of defendant, on the ground that they are
held as collateral security, should show the amount of the debt
secured by them.

APPEAL from Lamar. Tried below before the Hon. John
C. Easton.

The opinion contains a careful statement of the case. The
case was taken from Austin to Tyler, and decided December
4, 1877.

*Johnson & Miner* and *H. S. Bennett,* for appellants.

*E. L. Dahoney,* for appellee, cited Cummings v. Rice, 19
Tex., 225; Patton v. Gregory, 21 Tex., 513; Montgomery v.
Nash, 23 Tex., 157; Baldridge v. Gordon, 24 Tex., 288;
Ward v. Bledsoe, 32 Tex., 251; Van Alstyne v. Sorley, 32
Tex., 532; Clayton v. Frazier, 33 Tex., 101.

GOULD, ASSOCIATE JUSTICE.—Dahoney, as administrator of
Harlin, brought this suit against Beauchamp, alleging that
Harlin died at Beauchamp's house; that Beauchamp, with-
out right or authority, took possession of four promissory
notes, payable to Harlin or bearer, two on Finch, and two
on Freeman, each secured by a vendor's lien on land sold by

Harlin; that he wrongfully demanded and received from Finch part payment in horses and stock, and finally received from Finch a conveyance of part, and from Freeman of all the land, in payment for which their respective notes were given. Finch and Freeman were also joined in the suit; the object of the suit being, after having the notes adjudged to be the property of the estate of Harlin, to vacate the conveyances to Beauchamp, and to have judgment against Finch and Freeman respectively on their several notes, and enforcing the vendor's lien. The petition also alleged that Beauchamp had conveyed the land to Huyler, charging that Huyler had notice of all the facts, making him also a defendant, and seeking to subject the land in his hands.

Beauchamp filed a general exception and general denial, and died before answering specially. His executors adopted his former pleas, and also answered, that of their own knowledge they knew nothing of the allegations of the petition, but that they are informed and believe that Harlin, in his lifetime, was indebted to Beauchamp in a large sum of money, and to secure the payment of said indebtedness, gave up and delivered to said Beauchamp the notes in question.

The answer of Huyler was, that he had bought of Beauchamp, without notice or knowledge of any other claim; that he paid $200 cash, and gave his note for a like sum, claiming protection as an innocent purchaser. There was an intervention by one McWhirter, growing out of the fact that he and Finch were the original vendees of Harlin, and that after they had divided the land so purchased, Freeman had acquired his rights by contract with McWhirter, giving his notes to Harlin in lieu of McWhirter's note, and receiving from McWhirter a title bond. No question as to the rights of the intervenor, or of either Finch or Freeman, being before us, it is not necessary to notice further that part of the case. The judgment of the court was, that the notes were the property of Harlin's estate; that the plaintiff recover of Finch and Freeman the amounts of

their respective notes, with interest, setting aside their respective conveyances to Beauchamp, and decreeing the sale of the lands to satisfy the plaintiff's vendor's lien, and giving to Finch a judgment against Beauchamp's estate for the value of the horses paid by him on his notes.

There was a motion for new trial, and a motion in arrest of judgment by Huyler, one ground of the latter motion being that the jury had failed to find on the issue as to him. These motions were overruled, and this appeal is prosecuted by the executors of Beauchamp and by Huyler.

We are of opinion that the record does not show a verdict sufficient to support a judgment enforcing plaintiff's lien on the land in Huyler's hands.

If there had been simply a general verdict in favor of plaintiff, and that the land was subject to his lien, that general verdict might reasonably be construed as intended to affirm the plaintiff's full case, and to negative all the defenses set up against his lien, including Huyler's. But, in truth, the court submitted to the jury several issues, instructing them to write their response to each issue on the charge where the word "answer" was written; and the connection in which the response finding that the notes were a lien on the land comes, shows that it means simply that the notes were given for the land. The charge first submits to the jury the issue as to whose property the notes were at Harlin's death, and the response of the jury, written on the charge at this place, finds that issue in favor of Harlin's estate. The charge then proceeds as follows:

"If you find that these notes belonged to Beauchamp, this will end your inquiry so far as these notes are concerned. But if you find that these notes were the property of Harlin's estate, you will return a verdict for the amount of said notes, and interest up to this date, less the sums that have been paid to Harlin in his lifetime, if any. The second issue will be, on what land are these notes a lien; and you will answer whether the Finch notes and the Freeman notes were liens

on separate tracts of land. Answer: 'We, the jury, find that the Finch and Freeman notes are liens on separate tracts of land, known as the Finch & McWhirter tract of land, better known as parts of the old tan-yard tract of land.'

"W. A. RADFORD, *Foreman*."

This is the finding relied on, in the brief of counsel for appellee, to support the judgment. The question submitted, and answered, was as to what land these notes were given for, and did not extend to the issue as to Huyler. This becomes more evident as the ensuing part of the charge is examined. After instructing the jury as to Finch's rights to recover of Beauchamp's estate the amount he paid to Beauchamp, and to have his deed cancelled, the jury are told, as to Freeman's note, "If you find that these notes were the property of Harlin's estate, then you will return a verdict in favor of plaintiff, and against Freeman, for the amount of these two notes, and interest on them up to this date, and a vendor's lien on the land which they cover." This instruction authorized and required such a verdict as was rendered on the subject of the lien, without looking to any other question than,—What is the land covered or sold? The charge next instructs the jury on the intervention, and here, in the appropriate place, follows their answer on that issue. Then follow some general instructions as to the rights of the holder of a note payable to bearer, defining an innocent purchaser as one who, without notice, actual or constructive, has purchased, and paid the purchase-money; and the jury are told that if they find the notes were turned over by Harlin to Beauchamp merely as collateral security for what Harlin owed Beauchamp, to find for the plaintiff on the first main issue. Nowhere are the jury instructed in what manner their verdict should be formed, if Huyler was an innocent purchaser as to any part of the land. After the charge, comes what is termed the general verdict, being only a verdict against Finch and Freeman respectively for the principal and interest of their notes, and in favor of Finch for

the amount paid Beauchamp, and that his deed be cancelled; but being wholly silent as to any lien. Neither this so-called general verdict nor any of the special findings can, by any reasonable construction, be regarded as extending to Huyler; and there being no verdict as to him, his motion in arrest of the judgment should have been sustained.

The charge of the court would seem to involve the proposition that the land was subject in Huyler's hands, notwithstanding he might have bought and paid part of the purchase-money, without notice of any opposing claim, if he had received such notice before making full payment. As Huyler's answer admitted that he had only paid half of the purchase-money when his answer was filed, the court, perhaps, regarded it unnecessary to present any issue as to him. But it is believed that if Huyler, at the time he made his cash payment, would have been protected had it been a payment in full, he was entitled to protection to the extent of the payment then made. (1 Story's Eq., sec. 64; Lead. Cases in Eq., vol. 2, pt. 1, p. 76, *et seq.;* Youst *v.* Martin, 3 S. & R., 423; Flagg *v.* Mann, 2 Sumn., 486; Juvenal *v.* Jackson, 2 Harris, (Pa.,) 519.)

It is to be observed, that the plaintiff was seeking equitable relief, and that relief will not be extended if, under all the circumstances of the case, it is inequitable to grant it. (3 S. & R., *supra.*) It can hardly be equitable to deny protection to a purchaser, otherwise equitably entitled to it, merely because he has not fully paid the purchase-money.

There was also error in that part of the charge which held, that if the notes had been deposited with Beauchamp as collateral security, they should find that Harlin's estate was entitled to them.

The notes were payable to Harlin or bearer, the legal title passing by delivery.

When such negotiable instruments are deposited as collateral security for a debt, the creditor is not a mere mortgagee or lien holder, who, in case of the death of his debtor, must

prove up his claim against the estate, and ask the aid of the Probate Court to enforce his lien. He has, in his own hands, the means of paying himself, and may, at any time after his debt is due, collect the collaterals, and appropriate the proceeds to such payment. To the extent of his debt he may appropriate the collaterals, being accountable only for the surplus; and there is nothing in the Probate laws of this State inconsistent with the exercise of such authority.

If, however, these negotiable securities prove to be uncollectible, and the creditor be driven to treat them as mere personal property, pledged or mortgaged to secure a debt, and to ask the aid of the courts in enforcing his lien by a sale, then, indeed, he might come within the reach of the Probate laws, as a mere mortgagee or lien creditor, and occupy no better position than the holder of a mortgage or deed of trust. (1 Daniels on Neg. Insts., sec. 833; Donohoe *v.* Gamble, 38 Cal., 341.) The right of the holder of a deed of trust to proceed to sell, has been held to be suspended, in case of death, by force of our Probate laws. Those laws have subordinated such claims to others, which the statute directs to be first paid. But there is no provision of the Probate law which reaches a creditor who has, in his own hands, that which may be treated as so much money, and appropriated as such to the payment of his claims.

The answer of Beauchamp's executors, stating their belief that Harlin was indebted to Beauchamp in a large sum, and had deposited the notes to secure that indebtedness, should have stated the amount of the debt secured, because the right to appropriate the collaterals was limited by that amount. The mere fact that the notes were held as collaterals for some debt, was not a sufficient justification of the appropriation, unless it appeared that the debt secured was at least equal in amount to the notes. (Edws. on Bail., page 261; Garlick *v.* James, 12 Johns., 146.)

Enough has been said to call attention to the points involved in the case, as to the parties before us. As to the

rights of Finch and Freeman, who have not appealed, we intimate no opinion whatever.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.