[Opinion delivered May 10, 1880.]

---

W. C. WHITSETT ET AL. v. W. C. MILLER ET AL.

(Case No. 2994.)

1. PAROL PURCHASE OF LAND — POSSESSION — NOTICE.— The purchaser of land by parol, who pays a portion of the purchase money, goes into possession and makes improvements thereon, acquires an equitable title thereto, and such possession is notice of whatever right he may have to, or interest in, the land.

2. TENANT MAY DISPUTE LESSOR'S TITLE.— A tenant induced to take land by mistake, fraud or misrepresentations on the part of the lessor may dispute his title.

3. ESTOPPEL — NOTICE.— Possession by one claiming an equitable title to land is notice of the claim, and he is not estopped from asserting it by an acknowledgment of tenancy obtained by misrepresentations on the part of the lessor; such possession is also notice to all who, by their relations to the lessor as principal and agent, community in interest or common design against the tenant, are chargeable with the effect of notice to the lessor.

4. CHARGE OF THE COURT.— Failure of the court to instruct the jury as to the defense of a party who has interposed a proper plea, and adduced evidence in support of it, is error, as is also a charge upon the plaintiffs' case, which communicates to the jury an additional weight to the evidence.

APPEAL from Fannin. Tried below before the Hon. John C. Easton.

December 21, 1871, Miller brought suit in the district court of Fannin county for specific performance, and to re-

move clouds from his title to a tract of land; against Whitsett, E. H. Smith and her husband, J. L. Smith.

The petition alleged substantially that in February, 1868, Miller, by parol contract with one J. M. Collins, then the owner of the land, bought it at an agreed price of $1,500; one thousand of which was at the time settled by that sum owing Miller from Collins upon a settlement, and five hundred to be paid in stock horses on demand; that in October, 1868, under the contract, Miller had entered upon the land, had resided there ever since, and had made valuable improvements thereon in clearing about one hundred acres and building cabins, etc. Payment of $300 in cattle and labor was alleged in 1867; readiness to pay the balance, and $400 tendered in court, so much of which as may be necessary to be applied to the discharge of the remainder. It was also alleged that on November 27, 1868, Collins had conveyed the land to defendant Whitsett with notice, and he to defendant Mrs. Smith, she also having notice. Conspiracy among defendants and with Collins to defraud plaintiff was alleged.

The defendants demurred; pleaded general denial; sale and conveyance in good faith by Collins to Whitsett, November 27, 1868, and by Whitsett to Mrs. Smith November 10, 1871; that in January, 1870, defendant Whitsett had leased the land to Miller, who became his tenant for the year and who paid rent therefor; lease for 1871 to Smith and wife by Miller, who attorned to them; and that from such tenancy existing at the time of purchase by defendant Smith, plaintiff was estopped, etc. Smith and wife alleged the value of rents on the place for 1871, and asked judgment, etc.; also set up indebtedness by Miller to Collins, giving items, notes and judgments.

The plaintiff in replication alleged that in 1870 he had heard of Whitsett's claim to the land, and had consulted an attorney, who had advised him that his claim to the land could not be maintained, and advised settlement with Whitsett. Acting in ignorance of his legal rights he had made the agreement with Whitsett, who at the time had assured

plaintiff that the purchase money he had paid to Collins should be repaid; that he had renewed the lease under same conditions of ignorance, etc.; that he took counsel of other attorneys, and had repudiated the tenancy promptly, etc.; and the defendant Whitsett not having secured the return of the purchase money.

Exceptions to the defendants' plea of estoppel from the attornment of plaintiff to Smith were sustained also to the claim for rents and money claims set up as existing in Collins' favor and against Miller.

On the trial plaintiff testified, " my understanding was that I was to have the Tacket place," and that in February, 1865, he and Collins had a general settlement in the town of Brenham, Collins making " the settlement, and said that he owed me (Miller) $1,000, and started to give me his note, and I told him I would rather have the land, *and he then sold me the land for* $1,500. The $1,000 he owed me went in part payment for the land, and I was to pay him $500 more in good gentle horse property whenever he demanded it. Foster was in possession of the land at the time I bought it. I did not move on the land until October, 1865; have been in possession ever since. I did some work on the place in March, 1865; broke and fenced ten acres of the land; have paid Collins $300 on the place since I bought it. About eighty acres had been broken when I bought it, and a house was on it.

" I broke and fenced one hundred acres of land, built four cabins, and dug a well. All the improvements I put on the place worth $630 to $670. Collins was at my house in 1866."  . . .

R. H. Taylor, for plaintiff: That he was acquainted with J. M. Collins and the Tacket place; knew them in 1864 and 1865. Miller lived on the Tacket place in 1865; had a conversation with Collins and Miller in 1865 about the Tacket place. Collins said he had let Miller have the Tacket place."

. . .

Joseph Bryant testified: " Collins told witness he had sold Miller the Tacket place" in 1865. " Saw Miller in pos-

session of the place in spring of 1865." Galbraith "had a conversation with Collins at witness' house in July, 1866, when Collins stated to witness that the Tacket place belonged to Bill Miller." Plaintiff read in evidence a deed from Tacket and wife to Collins for the lands described in the petition.

The defendants read in evidence a deed from Collins to Whitsett for the land, of date November 27, 1868, and deed from Whitsett to defendant Mrs. E. H. Smith, of date November 10, 1871.

Collins by depositions denied in detail the circumstances detailed by Miller; denied ever selling the land to Miller; said he had let Miller remain on the place for keeping up the improvements and paying taxes until he could sell. He was owing Whitsett a large amount, and let him have this and other lands on the indebtedness.

Whitsett testified to his purchase of Collins; also, that in 1870 he had sent Miller word of his claim; Miller came to see witness and they settled, detailing a conversation; he agreeing that Miller should keep the place for 1870, make some new fencing and pay $25; Miller gave his note for the sum and paid it. That in January, 1871, he told Miller he had sold the place to his daughter, the defendant E. H. Smith, and that on 2d January, 1871, Miller had leased the place for that year, to give up the place in November, 1871. The written lease signed by Miller and to J. L. Smith was read. Whitsett wrote the document; rent was for one-third the corn and one-fourth the cotton. Witness detailed a conversation had in June, 1870, with Miller, in which witness told Miller he must look to Collins to pay him (Miller) his advances on the land, etc.

Defendant Mrs. Smith testified that she did not know, when she bought the place, of Miller setting up any claim to the land; knew him only as tenant of her father and husband.

It was in evidence that Collins and Smith were sons-in-law of Whitsett; that Collins was an army contractor during the war, and that Miller had been in his employ much of the

time, part of time as a detailed conscript; at the time Collins deeded the land to Whitsett he also conveyed his other lands to Whitsett, and at the time a number of suits were pending against Collins.

In explanation, Miller explained that in 1868 he had asked Collins for a deed at Fort Smith, Ark., and Collins said there was difficulty in making deed there, and that he would come to Texas and there make a deed. Miller also testified that he had been ready and willing to pay Collins the balance of the purchase money, etc. That he heard in 1870 of Whitsett claiming the land; consulted a lawyer, who told him he could not hold the land, and advised him to settle with Whitsett; that he went to see Whitsett, who assured him that Collins would be here in the spring, and would pay him (Miller) back the money advanced. In these circumstances he made the agreement with Whitsett for lease; that the next year he renewed the lease with Whitsett; did not read the paper he signed, and thought it was a lease to Whitsett. About a year after his first consultation he consulted the law partner of the attorney he first consulted, who on a second interview told him that his father was " the regularly retained counsel for Whitsett" and that they could not take his case, etc.

There was much and contradictory testimony as to the business dealings and state of accounts between Collins and Miller before, at the time, and after the date of the *alleged sale.*

There was no testimony as to the date that Miller repudiated his tenancy, or that he did so before the institution of the suit, December 21, 1871.

The court instructed the jury as to the facts necessary to be proved to entitle plaintiff to recover. The defendants excepted to a number of the charges and asked a large number of instructions, all of which were refused.

The jury found a verdict for the plaintiff for the land, allowing defendants $200 balance of purchase money, upon which a decree was rendered.

Motion for new trial was overruled and defendants appealed.

*Richard B. Semple* and *R. W. Campbell*, for appellants.

*Throckmorton & Brown*, for appellees.

A. S. WALKER, J.— The fourth and fifth assignments of error alone need to be particularly considered.

The first assignment relates to sustaining the exceptions of plaintiff to the pleas of estoppel from the lease, etc. As defendants had the benefit of the facts on the trial in support of other defenses, no injury resulted.

The second assignment questions the sufficiency of the petition. This is not well taken. The petition was good.

The third, sixth and eighth are too indefinite.

The seventh, to the overruling motion for new trial, has nothing additional to the assignment of errors.

The fourth and fifth assignments complain of certain instructions which were given and refused.

The fourth instruction given, . . . so far as objectionable, is: "If you believe from the testimony that the plaintiff purchased the land in controversy from Collins by a verbal contract, paying part of the purchase money (either in property, money, or the indebtedness of Collins to him), and that Miller went into actual possession of the land with the knowledge and consent of Collins, and made valuable improvements thereon, then said purchase so made vested in Miller an equitable title to the land superior to the legal title which remained in Collins, or which defendants now hold."

5. "If you believe from the evidence that the plaintiff was in the actual possession of the said land, then such possession was notice not only to the defendants but to all the world of his claim of title, and when Whitsett purchased of Collins he took whatever title he got by his deed with full notice of Miller's claim of title to the land, and hence the defendants cannot claim to be innocent purchasers."

7. "In order for the acts of a party to operate as an estoppel, the acts must have been done with the intent to influence the other party in his conduct." . . . The court

then charged that if Miller's attornment was from mistake of his rights, or on Whitsett's unperformed assurance that he would be repaid, he could assert his title, etc.

The ninth instruction informed the jury, " if, at the date of the deed from Whitsett to Mrs. Smith, this alleged tenancy (made January 2d, ending in November) had expired, and if Miller at that date was in possession of the land, holding the same adversely to her, and if she knew, or could have been informed by a reasonable inquiry, that Miller was in possession of and setting up a claim of title to the land, then she is not an innocent purchaser, and cannot be protected as such."

The defendants asked the court to charge the jury, " if they believe from the evidence that Mrs. E. H. Smith purchased said land from Whitsett and gave a fair price therefor, in good faith, and that at the date of their purchase Miller held said premises as the tenant of said defendants or either of them, and that she had no knowledge that said Miller was at that date setting up any other claim to the premises in controversy, they will find for the defendants." This was refused.

It may be remarked that, however perfect the equitable title of Miller may have been upon the facts as alleged, and as made by him in his testimony, still the very groundworks of his equity were attacked in the testimony for the defendants.

Collins denied the contract and denied the payment of anything on the contract; and there was at least a confused condition of their money matters, shown by other testimony adduced, to have existed at or soon after the alleged parol purchase.

The defendant, Mrs. E. H. Smith, by plea, and by testimony to the support of the plea, set up affirmative equities in the land, to support the legal title which had been conveyed to her before the suit was brought.

It was in evidence, that, in addition to the legal title, she had given therefor a valuable consideration, perfected at the delivery of the deed to her.

To attack her legal title by destroying her equity, it de-volved upon Miller to show notice to her, or facts charging her with such notice of his claim. She had testified that she only knew Miller as her father's and husband's tenant. There was no evidence of actual knowledge brought home to her.

Thus the effect of Miller's possession, and of its character, become of vital importance.

It may be that the judge below looked upon Whitsett's act in taking the second lease from Miller as destructive of any idea of good faith in his daughter, for whom he acted in taking Miller's obligation for rent; charging Mrs. Smith with knowledge of all the facts known to her agent. But even this agency was a fact for the jury.

The closing paragraph of the fourth charge concluded the rights of Mrs. Smith by the notice of which her grantor was charged at *his* purchase. At least her claim is there limited to *the* bare legal title, as was Whitsett's.

So of the fifth instruction, by which it is stated that Miller's possession is conclusive, not only against Whitsett, but as against all his vendees. This could only be true as to the state of the title at the date of the deed to Whitsett; it could not be true as limiting the natural effect of Miller's actions and relations to the property, which may have induced action on the part of others, based upon an altered state of the title evidenced by Miller's acts.

The seventh instruction contains the proposition that to create an estoppel *in pais* the acts must have been done with the particular intent "to influence the other party in his conduct." To this should have been added the further extension of the right to result from the effect of *the act* as one that he had reason to believe, as a man of ordinary prudence, would influence the conduct of others (Big. on Estoppel, 600), or "if the act and circumstances were such as to justify defendant in acting upon it." Mayer *v.* Ramsey, 46 Tex., 375.

The doctrine "that the act of the party against whom the estoppel is claimed must be *wilful* has been overruled or

limited." Big. on Estoppel, 398. It extends as well to acts of carelessness and negligence, inducing or resulting in changing the conduct of others, as acting upon a condition of facts presumed from such acts, and as to which it would be fraudulent should such presumptions be denied. Page v. Arnim, 29 Tex., 72. Or to any act inducing a change of condition which cannot be replaced without injury to the party acting. Beardsly v. Foote, 14 Ohio St., 416.

The ninth instruction is upon a hypothetical state of facts. At least the facts which would authorize it do not appear in the statement of facts. It nowhere appears in evidence that at the date of Whitsett's deed to defendant, Mrs. Smith, that Miller's second lease had expired, or that he was at the time setting up a claim to the land.

While the instruction asked by the defendants and set out above is perhaps not entirely free from objection so as to render its rejection error in itself, still it was sufficient to call the attention of the court to the deficiency in the general charge as to the rights of Mrs. Smith under her plea of *bona fide* purchase.

The court in many ways had avoided the legal effect of the estoppel as pleaded; every part of the plaintiff's case had been carefully protected. The defendant had a right to have *her case* explained to the jury. She had a plea, and evidence under it sufficient to sustain it in absence of contradictory testimony. It was error not to give it to the jury.

Assuming the plaintiff's testimony to be true, he had an equitable title to the land at the time of Whitsett's purchase. His possession charged Whitsett with notice of his title, and Whitsett took only the bare legal title, subordinate to the equity in Miller.

The mistake in the law under which Miller appears to have acted, with knowledge of the facts, was accompanied with such assurances from Whitsett at the time of his "settlement" in 1870, when the first lease was made, that it vitiated the contract, at least against Whitsett and his vendees with notice. Moreland v. Atchison, 19 Tex., 310; Mayer v. Ramsey, 46 Tex., 375.

As a question of fact from the testimony, there is little ground for belief that Mrs. Smith acted upon Miller's conduct, independent of and so as to avoid the taint of Whitsett's contract with Miller. The parol agreement for exchange was made before Miller's second lease to J. L. Smith, so that could not have influenced the sale. The lease was taken by Whitsett, who wrote it for his daughter. The ordinary doctrine of agency would charge her with her agent's knowledge in the transaction.

But as against Whitsett, Miller could disavow his tenancy. "It is agreed in all the cases that if a tenant was induced to take the land by mistake, fraud, or misrepresentation on the part of the lessor, he may dispute his title." Big. on Estoppel, 389, and cases cited.

It would be an oppressive application of the rules of law to give such effect to *the acts* of Miller in acknowledging his tenancy, paying money to Whitsett and promising to pay to Smith, as to operate as a conveyance of Miller's equitable title to these lands to Mrs. Smith, without her payment of any consideration to Miller for his property.

The instructions given as to Miller's right to repudiate the tenancy were substantially correct in law.

The possession of Miller was notice to Whitsett and to all who, by their relations to Whitsett as principal and agent, community in interest, or common design against Miller, are chargeable with the effect of notice to him. The relations of Miller and Whitsett to the land; the representations and assurances made to Miller inducing the acknowledged tenancy; the want of consideration to Miller; his ignorance of his title; Whitsett's perfect knowledge of the transactions, all may be chargeable to the parties, if any, with whom and for whom he was acting. Wade on Notice, §§ 671, 681, 688.

The intimate relationship by blood, action, interest and intent, shown by the testimony as possibly existing between the parties, will necessarily have an effect in determining the actual extent of notice to one of the parties as affecting the others.

In claiming as a *bona fide* purchaser under her plea, it devolved upon Mrs. Smith to exhibit a deed to herself and to prove payment of the consideration, without notice at the time of the delivery of the deed and payment.    Story's Eq. Jur., 1502; Watkins *v.* Edwards, 23 Tex., 447.; Huyler *v.* Dahoney, 48 Tex., 238; 47 Tex., 459; Mitford & Tyler's Pl. & Pr. in Eq., pp. 362, 363.    Her equity would be defeated by notice of Miller's claim (if indeed his be the superior equity) at any time before November 10, 1871, the date of the deed to her for the land, and of her deed to her father for the land given in consideration.    Her estate in the latter could not be divested by any parol agreement for the exchange of lands.    The certificate of privy acknowlment to her deed only evidenced her parting with any consideration for the land, as payment to satisfy the requisites of the defense of *bona fide* purchaser.

For the error of the court in failing to instruct the jury as to the defense of defendant Smith in the form or construction of the charges upon plaintiff's case so as to communicate to the jury an additional weight to the evidence; and in the defective charge as to the estoppel pleaded, and to which there was some evidence, the judgment will be reversed.

REVERSED AND REMANDED.