ABRAHAM FLETCHER v. JAMES F. AND JACOB L. ELLISON.

(Case No. 3595.).

1. DEED — EVIDENCE.— A deed never proven or acknowledged for record, or recorded, may be a valid and effectual conveyance, and is admissible in evidence upon proof of its execution. 28 Tex., 663.

2. ANCIENT DEED — EVIDENCE.— A deed more than thirty years old is admissible in evidence, without proof of its execution, as an ancient deed, where it is produced by the party claiming under it and entitled to its custody, and nothing is adduced in proof to cast suspicion upon it.

3. DEED — DESCRIPTION.— Description of land in a deed locating it in such manner that running one line will designate it and set it apart, and there is only one part of the survey where it could be so designated, is sufficient.

4. HEIRS — INNOCENT PURCHASER.— One who buys from heirs who sell without recourse upon them for warranty takes only such title as they own, and he is not an innocent purchaser.

5. SAME.— A deed from the heirs of a vendor whose conveyance has never been recorded conveys no greater title than was vested in the heirs. The land having been conveyed by the unrecorded deed of their ancestor, they inherited nothing from him, and their deed will not convey anything. 34 Tex., 553.

6. UNREGISTERED DEED — PURCHASER IN GOOD FAITH — NOTICE.— To entitle a subsequent vendee to have a prior unregistered deed postponed to his subsequent conveyance, it must appear: 1st. That he was a purchaser *bona fide*. 2d. That he purchased without actual or constructive notice of the title of the prior vendee, and that the purchase money has been paid; a recital of that fact in the deed is not sufficient. 23 Tex., 449; id., 528.

7. BANKRUPT SALE — QUITCLAIM DEED.— A purchaser at bankrupt sale acquires only a quitclaim deed. 24 Tex., 417.

8. PURCHASER IN GOOD FAITH — QUITCLAIM DEED.— A quitclaim deed cannot exclude the operation of a prior unrecorded deed, and only conveys the interest of the grantor at the time he makes it. One claiming under it cannot be deemed a *bona fide* purchaser of any greater interest than his grantor had. 38 Tex., 635; 11 Wallace, 232.

9. PAYMENT OF PURCHASE MONEY.— Giving a negotiable note for the purchase money of land, which has been assigned to an innocent holder is equal to the payment of money, but it must appear that the *land* was purchased and not the *title* to it. 17 Tex., 673.

10. UNPAID PURCHASE MONEY — GOOD FAITH.— Where the defendant pleads innocent purchase in good faith, the plaintiff is entitled to recover to the extent that the purchase money remains unpaid at the institution of the suit.

11. STALE DEMAND.— Stale demand has no application where a plaintiff asserts his legal title, asking no equitable relief, and he can only be defeated by the general law of limitation applicable to purely legal demands.

12. POSSESSION.— One making an entry upon land under a claim of title thereto by a recorded deed is deemed to hold possession co-extensive with the boundaries stated in his deed, when there is at the time no open adverse possession of the land in any other person.

ERROR from Caldwell. Tried below before the Hon. L. W. Moore.

The facts appear in the opinion.

*James H. Burts* and *Stringfellow & McNeal*, for plaintiff in error.

*Nix & Story*, for defendants in error.

QUINAN, J.— This was an action of trespass to try title, instituted in the district court of Caldwell county on 25th June, 1875, by Fletcher against James F. and Jacob L. Ellison, for the recovery of a tract of land out of the Pettus two-league grant on the San Marcos river.

The plaintiffs deraigned title by virtue of a conveyance from Wm. Pettus, the original grantee, to one Stephen Taylor, dated June 26, 1839, and by a conveyance from Taylor and wife to him, dated October 10, 1840.

The conveyance from Pettus to Taylor describes the land as follows: "The said five hundred acres are to be surveyed and divided from the said tract of two leagues of land in the following manner, namely: One thousand acres which this vendor has heretofore sold to Benjamin Fulcher is to be taken from the lower part of the said tract of two leagues by a line running from the river to the back part of the tract parallel with the said lower line, having a front on the river bearing the same proportion to the whole front that one thousand acres does to the whole tract of two leagues, and the five hundred acres now sold shall in like manner be laid off by a line running from the river to the back part of the tract, parallel with the upper line of Fulcher's tract, and shall have one-half the front of Fulcher's tract, it being the intention of the vendor that both Fulcher and Taylor shall have their purchases run off by lines parallel with the lower or southeast side of this vendor's tract, and that their fronts on the river shall bear the relative proportion to the whole front of the two leagues that their respective purchases do to said two leagues, or as near as may be, the meanders of the river considered, so as to give the full quantity of land respectively."

To the introduction of this deed in evidence the defendants excepted: 1. Because of a variance in the description of the land from that mentioned in the petition. 2. Because never acknowledged or proven for record before any officer authorized by law to take acknowledgment of deeds. 3. Because said deed describes no particular land, and is uncertain as to the locality of the land intended to be conveyed thereby. 4. Because never recorded, etc.

These objections were overruled by the court, and we think correctly so. 1. We are unable to distinguish any material variance between the description of the land in the petition and the deed. 2. A deed, though never proven or acknowledged for record, or recorded, may nevertheless be a valid and effectual conveyance, and may be read in evidence upon proof of its execution. For aught that appears

in the bill of exceptions, the due execution of the instrument may have been proven; but without this, it is a document more than thirty years old, and was admissible in evidence without proof of its execution as an ancient deed, inasmuch as it was produced by the party claiming under it and entitled to its custody; and the fact of the sale by Pettus to Taylor, and the purchase by plaintiff from Taylor under it, is testified to by the witness Fletcher, and that there was nothing to throw suspicion upon it adduced in proof. 1 Greenleaf, 570; Stroud v. Springfield, 28 Tex., 663.

3. The land is sufficiently described to identify it. That this five hundred acres was to adjoin the one thousand acres sold to Fulcher is made clear by the references in the deed to the Fulcher tract, which would otherwise be irrelevant. Fulcher's tract is to be taken from the lower part of the two leagues by a line parallel to the lower line, and *so in like manner* the five hundred acre tract shall be laid off by a line parallel with the upper line of Fulcher's tract; the five hundred acre tract to have half the front of Fulcher's tract, and Fulcher and Taylor were to have their tracts run off by parallel lines with the southeast line of the leagues. There is but one line parallel to the lower line of the leagues indicated to be run, to define and set apart the five hundred acres, and that result could only be attained by taking the upper line of the Fulcher tract for the other parallel boundary line. Nowhere else would the running of a single line parallel with the lower line and to the back line of the tract set apart five hundred acres out of the leagues. It is plain from the map of the two leagues which is in the record that a line run upon the upper portion of the league parallel with the lower line of the league so as to cut off five hundred acres there, would take in very little, if any, front upon the San Marcos river. And to locate this five hundred acres upon any other portion of the leagues than adjoining the Fulcher tract on the upper lines, would require the running of more than one parallel line. These circumstances and the reference in the deed to the Fulcher survey, and the association of Ful-

cher and Taylor in the running of their lines, leave no room to doubt that the land in controversy adjoined the Fulcher survey.

The plaintiff also introduced in evidence the deed from Taylor and wife to himself for the same land, dated October 10, 1840. To this conveyance the "same objections" were made as to the deed from Pettus to Taylor, which were, as we have seen, properly overruled. In many respects the same objections did not apply.

But in addition, the plaintiff proved that he paid Taylor a valuable consideration for the land, $2,000 in property; that he knew that Mr. Pettus had sold the land to Taylor, and that he purchased it from Taylor in good faith without any knowledge of any adverse claim to the land by Newsome or any one else.

This proof, we are of opinion, established *prima facie* the plaintiff's title to the land and his right to recover it, unless the defendants have shown a better title in themselves to retain it.

The defendants deraigned title to the land as follows.

1. A conveyance from Pettus to Nathan M. Newsome, dated April 9, 1837, for one quarter of a league of land out of his two-league grant.

2. A deed from the heirs of Newsome to P. B. Calhoun, dated 16th February, 1855, for all their interest in that land.

3. A deed from R. C. Saunders, assignee in bankruptcy of Calhoun, to M. C. Hamilton, dated August 3, 1869, and the proceeding in the bankruptcy of said Calhoun.

4. A judgment of the district court of Travis county in the suit of Calhoun *v.* Munger, administrator of Pettus, Crayton and others, wherein Hamilton intervened and judgment was entered for him for one thousand one hundred and seven acres, to be taken out of the Pettus two-league grant, and decreeing that this one thousand one hundred and seven acres be located next adjoining the lower one thousand acres, or "Martindale tract," in the two leagues.

The petition of Calhoun in this suit set out his purchase

from the heirs of Newsome, and prayed for partition. The petition of Hamilton in intervention alleged his purchase of the interest of Calhoun at bankrupt sale and his deed from the assignee, and prays that Calhoun's interest be set aside to him.

5. A warranty deed from M. C. Hamilton, dated 12th August, 1873, to James F. Ellison for this one thousand one hundred and seven acres of land.

6. A warranty deed from James F. Ellison to Jacob L. Ellison, dated 1st January, 1874, for fifty acres of this land adjoining the Martindale tract.

To the introduction in evidence of the deed from Pettus to Newsome, many objections were urged, and an affidavit was offered by plaintiff's attorney impeaching it as a forged instrument. It will not be necessary to consider these objections specially. Very clearly the affidavit of forgery was inconsiderately made. The original deed was not in evidence, the parties agreeing that copies of the record might be used in place of the original. But a copy of the record from Gonzales county was made and proved to be an exact copy. It did not in the slightest degree impugn the validity of the original instrument or the correctness of that copy, that (as appears to have been the fact) an incorrect copy from that record may have been taken and incorrectly recorded in Caldwell county. The execution deed as recorded in Gonzales county seems to have been proved by the oath of R. M. Williamson, a subscribing witness. Pettus, a son of the grantor, testifies that in 1840 he heard his father speak of having sold land to Col. Newsome. In the case of Crayton v. Hamilton, 37 Tex., 269, it was held that this same deed was properly proved for registration, and the objection made to it on that ground is therefore untenable. There is nothing to throw the slightest suspicion upon its genuineness.

It is also objected that the description of the land conveyed to Newsome is too indefinite. The deed purports to convey "one-quarter of a league of land on the east side of the river San Marcos in De Witt's colony, etc., to have a

proportionate front regarding the front on the river San Marcos of the two leagues of land which were conceded to me by the Mexican government in 1832," binding himself to make Newsome a good and sufficient legal title to the land whenever lawfully required so to·do. This description is not, certainly, very definite, but the legal effect of the instrument was, we think, to vest in Newsome an interest in Pettus' two-league tract to the extent of one-quarter of a league as a tenant in common with the grantor, Pettus. Freeman on Co-tenancy, 96.

The next link in the chain of title of defendants is the conveyance from the heirs of Newsome to Calhoun. No agreement is filed admitting the death of Newsome, and that Rebecca Newsome and others, the grantors, are his heirs. This deed was recorded in Caldwell county on the 15th January, 1859, and purported to "bargain and sell, quitclaim and convey to P. B. Calhoun, in consideration of $3,000 paid and his note for $1,111, payable in six months," all the right, title, claim or interest they inherit from Nathan Newsome in a certain tract of land, . . . it being one-quarter of a league of land situated on the east side of the San Marcos river. . . . The said one-quarter of a league of land to have a proportionate front regarding the front on the San Marcos river of two leagues of land which were conveyed to William Pettus by the Mexican government in the year 1832. The conditions of the foregoing bargain and sale are these: "Whereas, the before-mentioned parties of the first part have inherited, as heirs at law, from Nathan M. Newsome his interest in said one-fourth league of land, located as aforesaid, and have this. day conveyed the same to P. B. Calhoun, without recourse upon them, or either of them, for warranty of title; and whereas, the said Calhoun has paid in cash to the parties of the first part the sum of $3,000, and has executed his note payable to the said parties of the first part for the sum of $1,111, payable in six months; now, if the said Calhoun shall well and truly pay said note, this deed to be in full force," etc., reserving a lien upon said land till the obligation is complied with.

It is important to inquire what title was conveyed by this deed to Newsome. It is to be observed it is not only a deed from heirs, but specially a quitclaim deed of whatever interest they inherited from their father in this land. It purports to convey, and does convey, no more. Did it embrace the land in controversy in this suit? The answer to this must be found by determining what interest Newsome had in the land at the time of his death to descend to his heirs. His conveyance from Pettus vested in him, as we have seen, an interest in the two leagues to the extent of one quarter of a league in common with Pettus. But that deed, though it purports to have been executed 9th April, 1837, was never recorded until 29th May, 1846. And in the mean time Pettus sold the five hundred acres in controversy by metes and bounds to Taylor, and Taylor to plaintiff, by deed, with full warranty, dated 10th October, 1840, and it is proved that the plaintiff paid the full purchase price of the land without any notice, actual or constructive, of the previous sale by Pettus to Newsome, and so became a purchaser in good faith of the land. It follows that Fletcher acquired the better right to the land. It became his absolutely. Newsome could no longer set up any lawful claim to it. Nor could Fletcher, being a purchaser in good faith who had paid his purchase money, be divested of his title so acquired by the subsequent registration of the previously unregistered conveyance from Pettus to Newsome. The heirs of Newsome then did not inherit the land in controversy, and their deed to Newsome did not convey it to him. Rodgers v. Burchard, 34 Tex., 453, and the cases cited.

The next link in the chain of defendants' title is the deed from R. C. Saunders, assignee in bankruptcy of P. B. Calhoun, to M. C. Hamilton. To the introduction of this deed the plaintiff excepted, on the ground that it was not duly acknowledged for record. The exception does not point out in what particular the acknowledgment is insufficient. It was acknowledged before the clerk of a court of record having a seal. Pas. Dig., art. 7413.

This deed purports to convey to M. C. Hamilton "all the

undivided right, title and interest of the said P. B. Calhoun in and to the lands hereinbefore described in as full and perfect a manner as I can and ought to do as assignee." The interest conveyed is described as the undivided interest of Calhoun in a two-league grant of land, being an eighth part thereof in the Pettus two-league grant, "and was conveyed by Pettus to Newsome with the right to select the same on any part of the two-league survey, except the lower one-eighth thereof which had been previously sold," etc.

This deed was supplemented by the introduction in evidence of the proceedings of the United States district court of the middle district of Tennessee, in the bankruptcy of Calhoun. In this transcript is shown the adjudication of Calhoun as a bankrupt and the surrender by him of all his property for the payment of his debts, and the appointment of Saunders as his assignee. From the record of these proceedings, the defendant read a copy of assignment from the register in bankruptcy to R. C. Saunders, assignee, of the effects of the bankrupt, Calhoun. To the introduction of this copy of the assignment plaintiff excepted, on the grounds, "1. Because said assignment had never been recorded in Caldwell county. 2. Was not properly a file paper in United States district court. 3. Was not proved for record in Caldwell county."

These objections, we are of opinion, were properly overruled. The recording of the assignment was not necessary to the validity of the transfer. There is but one original assignment, and that must be filed eventually in the office of the clerk of the district court. And the copy in evidence was duly certified to be correct by the custodian of it. If, however, there was error in this, it was immaterial, for the property of the bankrupt was vested in the assignee by operation of the law. Bump on Bankruptcy, 130.

But it was further in evidence that in a suit instituted by Calhoun against Crayton and others, occupants of the two-league grant, Hamilton intervened, alleging his purchase at bankrupt's sale of Calhoun's interest in the land, and in that suit it was adjudged to him, and partition made setting apart to him, as against the other parties in the suit, one-

fourth of a league of land by metes and bounds, adjoining the Fulcher or Martindale one thousand acres, which would include the five hundred acres in controversy in this suit.

By these deeds and proceedings, whatever right or interest Calhoun had in the land was vested in Hamilton. His conveyance from the assignee was, on its face, a quitclaim deed and no more; so that he became the purchaser of the Newsome title by a quitclaim deed from Calhoun, who, himself, acquired it by a quitclaim deed, and so took the risk of the title. He acquired no larger interest in the land than Newsome himself had at his death. Dykes *v.* Miller, 23 Tex., 417.

"A quitclaim deed," says Mr. Washburn, "does not pass any more title than the grantor has, and does not give the one who claims under it the rights of a *bona fide* purchase without notice." 3 Washburn, Real Prop., 356; May *v.* LeClair, 11 Wall., 232.

This rule is laid down very broadly in the case cited of Rodgers *v.* Burchard, and again in Graham *v.* Hawkins, 38 Tex., 635, where it is said, "A quitclaim deed conveys only the interest of the grantor at the time he makes it, and that a party claiming under it cannot be deemed a *bona fide* purchaser of any greater interest than his grantor had at the making of the deed; and that a quitclaim deed cannot exclude the operation of a prior unrecorded deed."

It is true that in Taylor *v.* Harrison, 47 Tex., 461, and in Harrison *v.* Boring, 44 Tex., 255, this principle is said to be applicable only "to quitclaim deeds in the strict sense of that species of conveyance; and where its legal import is a quitclaim or deed of release of all one's right, title and interest, which is not intended and does not purport to convey an absolute right to land without covenants of warranty, as contradistinguished from a conveyance of the title, or chance for title, which the grantor may be supposed to have. Not only the terms of the deed, but the adequacy of the price given, and other circumstances attending the transaction, may serve to show, when brought in evidence, whether the purchaser bought the land or bought merely the

title." But in the present case there is no circumstance in proof attending these transactions between the heirs of Newsome and Calhoun, or between Calhoun or Saunders, his assignee, and Hamilton, which would warrant us in concluding that the deeds to them were other than what upon their face they purport to be, mere quitclaim deeds.

But it is in proof that Hamilton took possession of this one-fourth of a league of land March 28, 1873, and afterwards, on August 12, 1873, sold the land to the defendant, James F. Ellison, executing to him a conveyance therefor, with full covenants of warranty. The consideration named in the deed was $9,000, and of this amount it is shown that Ellison had paid, before the institution of this suit, the sum of $6,000. He lived upon the land and made valuable improvements, and purchased without knowledge of any adverse claim. His first payment of the purchase money, $3,000, was paid down; the second payment was made twelve months later; but the testimony does not show conclusively whether, at the making of the second payment, he had notice of the plaintiff's claim. Are, then, the defendants entitled to the land as purchasers *bona fide?* "To entitle a subsequent vendee to have a prior unregistered conveyance postponed to his subsequent conveyance, it must appear, 1st. That he was a purchaser *bona fide;* 2d. That he purchased without notice, actual or constructive, of the title of the prior vendee. It must appear that the purchase money was *bona fide* and truly paid; a recital of that fact in the deed is not sufficient." Watkins *v.* Edwards, 23 Tex., 446. "It is held that though it be secured to be paid, yet if it be not in fact paid before notice of the elder title, the plea of innocent purchaser will not avail." Beaty *v.* Whitaker, 23 Tex., 528. The giving of a negotiable note, which has been assigned to an innocent holder, will be of equal effect with the payment of money. Case *v.* Jennings, 17 Tex., 673.

We are of opinion that, under the facts as developed in evidence in this case, the defendants can defend their title and possession of the land in controversy as innocent pur-

chasers to the extent of their actual payment of the purchase money, and to that extent only. Jas. Ellison purchased from Hamilton, who was in possession of the land, and held the apparent legal title, without notice of Fletcher's claim, and paid in good faith a great part of the purchase money. He has a conveyance of the land, with warranty, and not merely a quitclaim of Hamilton's right or interest in it. He purchased the land, and not simply Hamilton's title to it.

But, inasmuch as the whole of the purchase money has not been paid, and he still owes Hamilton on the purchase, as it appears, to the extent that the land had not been paid for, defendants' title must yield to the superior right of the plaintiff. Huyler v. Dahoney, 48 Tex., 239.

Jacob Ellison purchased from James fifty acres of the land, but of that he resold to James forty acres, so that he now claims but ten acres of the land, and for that he has fully paid, and is entitled to be protected in his claim.

As our conclusions upon the subjects discussed will lead to a reversal of this judgment and a new trial of the case, and as upon that trial it may assume new and very different features, it would be perhaps premature now to determine whether James Ellison would be entitled to retain the land upon making compensation to Fletcher out of the unpaid purchase money for the portion of the five hundred acre tract which he has not paid, appropriating the amount he has paid to the full payment for the residue of the tract over the five hundred acres, or whether Fletcher should recover such portion of the land as has not so been paid for, and partition made with Ellison. These questions have not been discussed by counsel in their briefs, nor argued, and we pretermit the expression of any opinion in regard to them.

It remains to consider the defendants' pleas of stale demand and the statute of limitations.

The plea of stale demand we think has no application to the case. The plaintiff is asserting his legal title. He asks no equitable relief, and his legal right can only be defeated by the general law of limitation applicable to purely legal demands.

We are of opinion that the evidence does not support the plea of limitation. The earliest possession of the land in controversy proven is within three years previous to the institution of the suit. But the defendants insist that the parties who were previously for ten years and more in possession of other portions of the two leagues were tenants in common with Newsome, Calhoun and Hamilton, and that their possession inures to the benefit of the defendants. This proposition is not supported by the proof. No possession has been proven by any party, except a possession under title to specific portions of the land, within prescribed boundaries, not as tenants in common, but holding severally adversely to Newsome, Calhoun, Hamilton and all other persons. The deed to the upper half of the two leagues from the administratrix of Pettus to Shelburne sets apart that half specially in discharge of Pettus' bond to Shelburne, and under this deed the earliest entry upon the land seems to have been made. The other deeds introduced in evidence from Pettus' administrator were for four several quarters of a league adjoining Shelburne's half, and would not embrace the five hundred acres involved in this suit. The Adams deed, which defendants do not claim under, specially, in effect, recognizes Pettus' previous sale to Fulcher and Taylor of fifteen hundred acres on the lower part of the league, and excludes that fifteen hundred acres. " I take," says Judge Story, " the principle of law to be clear, that where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title, and he is decreed to have a seizin of the land co-extensive with the boundaries stated in his deed, where there is no open adverse possession of the land so described in any other person." And so it has been held that the possession of land by a purchaser under a deed of an entire lot is adverse to the rightful owner, though tenant in common with the grantor, because the entry is under an adverse title and not as co-tenant. Freeman on Co-tenancy, § 24.

The defendant's proposition in effect is, that although the

other possessors of this Pettus grant held possession of their several tracts by deeds to them in severalty, and adversely to him, yet that their possession constructively extends over this five hundred acres in controversy of which they never had actual possession, and to which they had no claim, and that under that constructive possession defendant can avail himself of the statute of limitations. This proposition would seem to require no answer.

The other questions raised in the brief do not require discussion. The objections made to the power of attorney to Smith from Hamilton, under which the deed to Ellison was executed, were probably well taken, but the defect was cured by the subsequent power of attorney ratifying Smith's acts.

We are of opinion that for the reasons indicated the judgment is not supported by the evidence, and ought to be reversed, and we so award.

REVERSED AND REMANDED.

[Opinion delivered November 22, 1880.]