COTTON et al. v. MORRISON et al.

(Court of Civil Appeals of Texas. Ft. Worth. June 17, 1911. Rehearing Denied Oct. 14, 1911.)

1. WITNESSES (§ 287*)—REDIRECT EXAMINATION—EXTENT.

Where a grantor, suing to set aside a deed for fraud of the grantee, testified on cross-examination that he had delivered the deed after having advised with an attorney, he was entitled on redirect examination to fully explain the facts attending the delivery, including the advice given by the attorney.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 930, 1000–1002; Dec. Dig. § 287.*]

2. EVIDENCE (§ 155*)—ADMISSION OF PART OF ACT, DECLARATION, OR CONVERSATION—EFFECT.

Code Cr. Proc. 1895, art. 791, providing that when part of an act, declaration, conversation or writing is given in evidence by one party the whole on the same subject may be given, etc., announces a proper rule of evidence in civil, as well as in criminal, cases.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 445–458; Dec. Dig. § 155.*]

3. DEEDS (§ 78*)—FRAUD—WAIVER—EVIDENCE —QUESTIONS FOR JURY.

Where a grantee, who procured a deed by fraud, sought to show that the grantor by delivering the deed after partial knowledge of the fraud waived the same, the grantor could show the facts attending the delivery, and that he did not intend to finally part with the control of the deed, so as to rebut the inference of waiver, and to make the question of waiver one for the jury.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 648; Dec. Dig. § 78.*]

4. HOMESTEAD (§ 123*)—CONVEYANCE—FRAUD —WAIVER.

A husband cannot by subsequent acts, unauthorized by the wife, validate a conveyance of the homestead, voidable on the ground of the grantee's fraud, practiced on the husband and wife joining in the conveyance.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 123.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by W. M. Cotton and another against T. W. Morrison and another. From a judgment for defendants, plaintiffs appeal. Reversed and remanded.

Hoover & Taylor, W. T. Allen, and H. A. Allen, for appellants. E. Graham, L. W. Dalton, Willis & Willis, and Mathes & Williams, for appellees.

CONNER, C. J. Appellant W. M. Cotton and his wife, Flaudia Lee Cotton, instituted this suit to cancel a deed made by appellants to T. W. Morrison, conveying 680 acres of land in Wheeler county, together with

certain personal property situated thereon, and also to cancel certain promissory notes given by appellant W. M. Cotton to said Morrison in exchange for a certain residence and an ice, light, and bottling plant situated in Plainview, Tex., together with all franchises, poles, wires, fixtures, etc., belonging to the light plant; appellants at the same time offering to return all property which they had received in exchange for their said property, and to do any and all things which equity might require in the rescission of the contract and exchange of property. It was alleged, in substance, that the negotiations were conducted in part by one A. T. Parton, and that the exchange had been induced by the false and fraudulent representations of both Morrison and Parton to the effect that the ice and light plant was of the value of $17,000, and yielding a monthly net profit of $500. It appears from further averments that the First State Bank of Plainview held a trust deed upon the ice and light plant, and later acquired one of the promissory notes executed by W. M. Cotton in the exchange, and Morrison, Parton, and the bank were all made parties defendant.

The defendants answered by general denial, and, among other things, specially that the plaintiffs in the suit, with full knowledge of the character of the property, its value, the earning capacity of the ice plant and of its expenses, and knowing all about the facts relied upon as false and fraudulent, delivered to the defendant Morrison the deed to the lands and property owned by the Cottons, and thus closed the transaction, and later used and appropriated certain notes that had been given to Cotton by Morrison in the exchange; and it was alleged that the Cottons thereby ratified the exchange contract, and were estopped to ask for a rescission.

The case was tried before a jury, and the plaintiffs introduced evidence in support of their allegations of fraud, and tending to show that the defendants Morrison and Parton had represented the ice plant and other property conveyed to Cotton to be worth $17,000, having a net earning capacity of $535 per month; that such statements induced the trade, and the ice plant was not worth over $7,000, and not making its running expenses. There was evidence, also, tending to show that after the exchange had been agreed upon appellant W. M. Cotton went to Plainview and took charge of the ice plant, and under the management of another operated it for a number of days, after which time he delivered the deed that he now seeks to cancel; but after the introduction of the evidence the court peremptorily instructed the jury to return a verdict for the defendant, which was done, and judgment was entered accordingly.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

[1] It appears by proper bill of exception that while the plaintiff W. M. Cotton was upon the witness stand, and after testifying in his own behalf, he was cross-examined by the defendant's counsel, and asked the following question: "Is it not a fact that, just before you delivered the deed yourself and wife made to T. W. Morrison, and accepted the deed that he made to you, that you had a conversation with Lawyer Graham, of Plainview, about the trade?" To which question the said plaintiff answered: "Yes, sir; it is a fact." Thereafter, upon a redirect examination of said W. M. Cotton, the plaintiffs by their own counsel asked the following further questions: "State whether or not he [Graham] advised you to deliver that deed, and if you delivered the same under the advice and direction of Graham." "State whether or not you would have delivered that deed to Morrison, or any one else at that time, if you had not been advised by your attorney, Graham, to do so." "State whether or not you delivered that deed to Morrison, or any one else, on August 2, 1909, of your own free will and accord, or upon the advice of your attorney." "Was your attorney, Graham, that you advised with, and that advised you to deliver this deed, the same Graham that is now one of the attorneys for the defendant in this suit?" To all these questions the witness would have given affirmative answers, but was not permitted to do so, upon objection of appellee's counsel that the matters sought were "hearsay" and immaterial, and appellants have assigned error to those rulings. It seems evident that the counsel for the defendants, in eliciting on cross-examination, as above shown, the answer of Cotton to the effect that he had delivered the deed of himself and wife to T. W. Morrison after having advised with Lawyer Graham, was endeavoring to support the defendants' plea of ratification and estoppel. Having so interrogated the plaintiff, we think it clear that the plaintiff, on redirect examination, was entitled to fully explain the facts attending such delivery including the advice given to him by the attorney named.

[2] In our Code of Criminal Procedure, art. 791, we find this legislative provision: "When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the court, as when a letter is read all of the letter on the same subject between the same parties may be given. And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood or to explain the same may also be given in evidence." While this provision is only found in the Code of Criminal Procedure, it is none the less a part of the written law of the land, and in our judgment announces a proper rule of evidence in civil, as well as in criminal, cases. It is said in 1 Greenleaf on Evidence, § 65, that: "In criminal prosecutions, it has been thought that greater strictness of proof was required than in civil cases, and that the defendant might be allowed to take advantage of nicer exception. But whatever indulgence the humanity and tenderness of judges may have allowed in practice, in favor of life and liberty, the better opinion seems to be that the rules of evidence are in both cases the same." So applying the rule, we think the court erred, as insisted in appellants' first assignment of error.

[3] Possibly these rulings, as appellees insist, should not of themselves require a reversal, inasmuch as there is some evidence in the record indicating that plaintiffs Cotton were permitted to show that the deed was delivered upon the advice of Graham; but the evidence is not so full and complete on this point as to make it clear that appellants were accorded their full right of explanation. For instance, it is pointed out in appellants' second assignment of error that the court refused to permit the plaintiff W. M. Cotton to testify to the effect that when he delivered the deed in controversy it was not with the intent of thereby ratifying the fraud of which he then had at least partial knowledge, but that he did so only upon the advice of the attorney, Graham, and with the intention of leaving the deed at the bank, where the delivery was made, until he could further advise with other counsel as to his legal rights in the matter. While, generally speaking, all persons are presumed to intend the legal consequences of an act voluntarily performed, yet acts performed when in controversy are to be read in the light of the attending circumstances; and it would seem that this would be particularly true in the present case where appellees are relying in part at least upon their plea of ratification and estoppel, embodying, as it does, in such an important sense the question of intent. The fraud alleged in the present case did not render the contract of exchange absolutely void, but merely voidable at the option of the Cottons. They had the power to waive the objections which otherwise might be taken, and ratify the agreement, and make it as binding as though it had been originally free from all vitiating elements; and the waiver may be express, or it may be by acts, whereby the party shows an intention to adopt the contract. But the act of delivering the Morrison deed, as was done at the bank, does not, as a matter of law, necessarily constitute a waiver of the fraud and a ratification of the agreement. It may, and does, doubtless, tend to do so, but the question was one for the jury; it being their right to determine the purpose of the delivery, when considered together with all of the circumstances pertinent thereto. The court, therefore, erred in giving the peremptory instruction. See Wells v. Houston, 29 Tex.

Civ. App. 619, 69 S. W. 183; Evans v. Goggan, 5 Tex. Civ. App. 129, 23 S. W. 854; Lambert v. McClure, 12 Tex. Civ. App. 577, 34 S. W. 973.

[4] For yet another reason pointed out in appellants' third assignment of error, we think the court should not have given the peremptory instruction. It was alleged and shown that 200 of the 680 acres conveyed by appellants, including improvements, constituted appellants' homestead, to convey which the wife's consent was necessary, and in which she was vitally concerned. There is nothing in the evidence tending to show that she did or said anything amounting to a ratification of the exchange agreement, if fraud as alleged there was, and the husband cannot, by subsequent unauthorized act ratify, or validate a conveyance, of the homestead at least, which the wife, because of fraud, would have the right in a court of equity to set aside. See Coker et al. v. Roberts, 71 Tex. 598, 9 S. W. 665; Johnson v. Callaway, 87 S. W. 178; Speer on Married Women, § 259. To hold otherwise would be to confer upon the husband the power to do indirectly that which the statutes regulating the conveyance of the homestead inhibit. Whether, in event appellants establish the fraud and misrepresentation alleged, and there be no ratification by the wife herself, and no proof of authorized acts on the part of the husband amounting to a ratification of the compromise agreement, so as to bind the wife, the effect will be to require the setting aside of the exchange agreement and conveyances entirely, or in so far only as the homestead may be affected, is a question we are not called upon to determine, and which we therefore will not discuss.

But for the errors mentioned, it is ordered that the judgment be reversed, and the cause remanded.