MORRISON et al. v. COTTON et ux.

(Court of Civil Appeals of Texas. Amarillo. Dec. 14, 1912. Rehearing Denied Jan. 18, 1913.)

1. EXCHANGE OF PROPERTY (§ 8*)—FRAUD—EVIDENCE—ADMISSIBILITY.

In an action to cancel a deed for fraudulent representations as to value and earning capacity of a certain electric plant and factory for which an exchange was made, evidence that the business was conducted in the same manner after the exchange as before, and that it did not pay running expenses, was admissible upon the question of the falsity of the statements with reference to the net income.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. § 8.*]

2. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Permitting a witness to testify in such case that after he took charge as manager the business was conducted in the same manner as before, if error, was harmless, where another witness testified to the same effect from personal knowledge.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

3. TRIAL (§ 252*)—INSTRUCTION—CONFORMITY TO EVIDENCE.

In an action to cancel a deed procured by false representations in an itemized statement of the net earnings of the business for which the land was exchanged, failure to instruct that plaintiff could not recover if the representations were matters of opinion and not of fact was not error, since such representations could not have been mere matters of opinion.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

4. TRIAL (§ 256*)—INSTRUCTION—DUTY TO REQUEST.

If defendant, in an action to cancel a deed for misrepresentations, desired a more specific charge in relation to the misrepresentations, he should have requested same.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

5. VENDOR AND PURCHASER (§ 242*) — INNOCENT PURCHASER—EVIDENCE.

Where, in an action to cancel a deed to land which had been conveyed by the original vendee to a bank, which assumed payment of the purchase price notes, there was no proof, aside from recitals in the deed, that the bank paid value for the land, or took it without notice of the plaintiffs' equities, the bank was not entitled to the rights of an innocent purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

6. EXCHANGE OF PROPERTY (§ 5*)—FRAUD—RATIFICATION AND AFFIRMANCE.

Where, in an action to cancel a deed, executed July 12th, because procured by false representations as to the value and income of the business for which it was exchanged, it appeared that plaintiff permitted the business to be run by the employés previously in charge until August 2d, and made no investigation and received no further information of its condition until that time, and that then, upon discovering the falsity of the representations, he immediately brought suit for rescission and cancellation, there was no ratification or affirmance precluding rescission.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 6, 8–10; Dec. Dig. § 5.*]

7. HOMESTEAD (§ 123*)—RIGHT TO RESCIND SALE—HUSBAND AND WIFE.

A wife's right to rescind a sale of the homestead for fraud could not be cut off by any act of ratification by her husband.

[Ed. Note.—For other cases, see Homestead, Dec. Dig. § 123.*]

8. EXCHANGE OF PROPERTY (§ 8*)—FRAUD—SUFFICIENCY OF EVIDENCE.

Evidence, in an action to cancel a deed because procured by false representations as to the value and income of a business for which

---

an exchange was made, *held* to sustain a finding that the representations were false.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. §§ 14–18; Dec. Dig. § 8.*]

Appeal from District Court, Hemphill County; F. P. Greever, Judge.

Action by W. M. Cotton and wife against T. W. Morrison and others. From judgment for plaintiffs, defendants appeal. Affirmed.

L. W. Dalton and Mathes & Williams, all of Plainview, and Willis & Willis, of Canadian, for appellants. H. E. Hoover, of Canadian, and R. E. Taylor, W. T. Allen, and H. A. Allen, all of Henrietta, for appellees.

HALL, J. This action was instituted by appellees Cotton and wife against T. W. Morrison, A. T. Patton, and the First National Bank of Plainview for the rescission of a contract for the exchange of lands, and to cancel the deed executed by appellees. The action is one for fraud and deceit; appellees alleging that appellants Morrison and Patton made fraudulent representations as to the value and earning capacity of a certain electric light plant, ice cream factory, and bottling works, which were conveyed to them in exchange for their section of land lying partially in Hemphill county. The defendant bank had taken up some notes made by appellants, and was a party in order that its equities might be adjusted. The cause has been heretofore tried and appealed, and the opinion of the Second Court of Civil Appeals, reversing the judgment, is found in 140 S. W. 114, where a more extended statement of the case may be seen.

[1, 2] In their first assignment of error the appellants insist that the court erred in overruling their objections to the testimony of N. S. Locke, to the effect that the property, consisting of electric light plant and other machinery in Plainview, Tex., and which was exchanged by appellants with appellees, did not pay running expenses during the time witness had charge of the plant. The objections urged were that the evidence was immaterial, irrelevant, and hearsay. There was certainly no error in overruling the objection that the evidence was hearsay. It appears that Locke took charge of the business about the 2d day of August, and continued to run it until the 12th day of October following. He testified that while he was in charge of the plant the business was conducted in the same manner as it had been prior to the time he assumed charge; that he made no change in the manner of handling the business, except to cut off some of the men and reduce the number of employés, which had the effect of lessening the expenses of the business. He further testified that he kept books showing the income and expenditures. It was further shown by the testimony of the witness Collins, who conducted the business for appellees from about the middle of July until witness Locke took charge, that there was no change in the method of handling the business; and he stated positively that it was conducted after appellees assumed ownership as it had been before. His testimony showed that he had worked several months in the plant while appellant Morrison owned it. If there was error in permitting the witness Locke to testify, then the error has been cured by the testimony of Collins, which was admitted without objection. However, we are of the opinion that all of this evidence was admissible upon the question of the falsity of appellants' statements with reference to the net income. In Collins v. Chipman, 41 Tex. Civ. App. 570, 95 S. W. 669, it is said: "By the second, fifth, ninth, and eleventh assignments of error it is contended that certain testimony, most of which was drawn out on cross-examination by the plaintiff of the defendants' witnesses Price, Seligson, and Brown, and of defendant himself, which tended to show the financial condition of the F. F. Collins Manufacturing Company subsequent to January, 1902, and that in 1904 or 1905 practically all of its assets had disappeared, and it had ceased business and was in liquidation, was irrelevant and inadmissible for any purpose. The issue in this case was fraud, and the burden of proving it was upon plaintiff. From its very nature it is usually impossible to prove it by direct and positive evidence, and for this reason large latitude is permitted in the admission of evidence on such an issue. Evidence of facts not themselves directly in issue are admissible, where such facts are relevant to the fact in issue. Such facts may be in time remote from the principal fact, but, when taken together and connected with other facts, they may form links in an unbroken chain of circumstances extending back to the time of the occurrence of the main fact, and establish its existence by showing that each link in the chain of facts extending from it was but the sequence of which it was the parent of proximate cause. If it be shown that in May, 1905, a corporation which in January, 1902, represented by its president as being in a prosperous condition, paying from its net earnings annual dividends of 20 per cent. upon its capital stock, is found to be out of business and practically without assets, when it is questionable whether any cause has been shown for such an overwhelming disaster, can it not be inferred from such facts, taken in connection with others, that such representations were not true, but that its depleted condition in 1905 was but an index to its condition in 1902? Such testimony sufficiently tends in some degree to show such representations were true. Such tendency authorized its admission as evidence. The degree of its probative force was for the jury to determine, and is a matter of no concern

to this court. Men do not gather figs from thorns or thistles; nor did plaintiff pocket dividends from capital stock he was induced to purchase by such representations." Appellees allege that Patton and Morrison had represented to them that the net monthly income from 'the light plant, soda pop and ice cream factory, amounted to $535, and introduced a written instrument, giving in detail the monthly income from the various customers, together with itemized statement of expenditures. Notwithstanding the fact that both Morrison and Patton were charged with gross fraud, bordering upon criminality, neither of them testified; and it does not appear from the record that the books of the concern, while in the hands of Morrison and Patton, were obtainable. We conclude under the above-quoted authority that the court did not err in permitting the testimony; and the first assignment is therefore overruled.

[3, 4] The second assignment of error is that the court erred in paragraph 1 of the charge in failing to instruct the jury that they must find from the evidence that the representations, if any, made by defendant Morrison were matters of fact and not matters of opinion, as plaintiffs allege same to have been in their amended petition. If appellants desired a more specific charge, it was their duty to ask a special charge curing the omission. There might be some question as to whether or not appellants' statement to the effect that the plant was worth $17,000 was the expression of an opinion or statement of a fact, but no such question could arise as to their statement that the monthly net earnings of the business amounted to $535. Their itemized statement put it beyond the possibility of 'an opinion. The second assignment is overruled.

The third assignment criticises the general charge, because it fails to confine the jury in their consideration of representations, and to the truth and falsity thereof, made on the date specified in plaintiffs' pleadings and prior thereto. We think the court's charge is not subject to the criticism, but is sufficiently clear to direct the minds of the jury to the particular representations alleged to be false, and the date thereof; and what is said here also disposes of the sixth and seventh assignments of error.

Appellants' fourth assignment is without merit, and is overruled. There was sufficient evidence to warrant the court in submitting the issue to the jury.

[5] By their fifth assignment appellants contend that the court erred in refusing to give to the jury their special charge upon the issue of innocent purchaser. While appellees' section of land was conveyed by Morrison to the bank, and in the conveyance the bank assumed and became bound to pay two notes given by Morrison to plaintiff in part payment thereof, this is not sufficient evidence to raise that issue. There was no proof, aside from the recitals in the deed, that the bank ever paid value for the land, or that it took the land without notice of appellees' equities. The only evidence of the bank's ownership of the land was the deed from Morrison and wife. It is settled law in this state that before a vendee can recover as an innocent purchaser he must prove, independent of the consideration recited in the deed, that he paid value for the land, and that he took the same without notice of the fraud, if any. Low v. Gray, 130 S. W. 272; Rodgers v. Burchard, 34 Tex. 441, 7 Am. Rep. 283; Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, 22 Am. St. Rep. 77.

[6, 7] Appellants requested a special charge upon the issue of ratification and affirmance, which was refused by the court, and this is the basis of the eighth assignment of error. While the first deed was executed on July 12th, and the plaintiff Cotton, through his agents, assumed control of the plant, the evidence further shows that these were the same parties previously employed by Morrison in running the business, and that appellee Cotton himself did nothing more than to merely go through the plant and give it a casual inspection prior to August 2d; that no books were ever exhibited to him, and he had no opportunity of gaining any information with reference to the income or expenditures incident to its operation; that during the time between July 12th and August 2d he lived on his farm in Hemphill county, a great distance from the property in question; that upon going to Plainview about August 2d he made an investigation sufficient to convince him that the statements of appellants with reference to the value and the net earnings of the business were untrue. He immediately returned to Canadian and, without even consulting his wife, filed this suit for rescission. Appellee Mrs. Cotton had no information whatever as to the receipts and disbursements incident to the conduct of the business, aside from that given her by appellants. Under this evidence we think the court was correct in refusing to submit the issue of ratification. There was no knowledge on the part of Cotton or his wife, and no reasonable opportunity to obtain such knowledge, prior to the institution of the suit; and in this connection it appears that 200 acres of appellee's land, included in this exchange, together with the improvements thereon, constituted the homestead of Cotton and his family. Since no opportunity of acquiring knowledge of the fraud can possibly be charged against Mrs. Cotton, her right to rescind could not be cut off by any act of ratification on the part of her husband, in so far as her homestead rights are involved. We understand the general rule to be that there can be no ratification of a part of a contract such as the one under consideration, and that if a rescission

is to be had the transaction must be rescinded in whole. York v. Gregg, 9 Tex. 85; Gatling v. Newell, 9 Ind. 572; Prewit v. Graves, 5 J. J. Marsh. (Ky.) 114; Stip v. Alkire, 2 A. K. Marsh. (Ky.) 257; Johnston v. Mitchell, 1 A. K. Marsh. (Ky.) 225, 10 Am. Dec. 627; 24 Am. & Eng. Enc. of Law, 624.

What is said in passing upon the eighth assignment also disposes of the ninth assignment.

The tenth, eleventh, and twelfth assignments of error are without merit, and are overruled.

[8] There was sufficient evidence to show that the plant was run in the same manner after the 12th of July as before. The evidence further showed that the expenses were reduced to some extent under Cotton's management, and that new customers were obtained after July 12th. It is further shown that Morrison represented the engines in the plant to be worth $4,000, while the testimony of Jordan showed that one of the engines was absolutely worthless, and that the other was worth not exceeding $750. While no witness testified specifically as to the value of the plant as a whole, this testimony, together with the uncontroverted evidence of Locke that the plant did not pay expenses during the time he had charge of it, was sufficient to support the verdict of the jury to the effect that the representations were false; and the fourteenth assignment of error is therefore overruled.

In disposing of the fifteenth assignment, it is sufficient to say that judgment of the court rendered in favor of the bank for the amount expended by it, and securing it by a lien upon the land, was as much as the court could possibly do in placing the bank in statu quo; and we think the judgment requiring the payment of the amount to the bank within 60 days meets all the requirements of the principles of equity.

No reversible error being shown, the judgment is affirmed.