## GRAHAM et ux. v. APPLE. (No. 2733.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 17, 1926.)

1. **Exchange of property** ⬤═8(4)—**Fraud is presumed, where grantor, in exchange, misrepresented agricultural qualities of land (Rev. St. 1925, art. 4004).**

Under Rev. St. 1925, art. 4004, fraud in exchange of property must be presumed, if grantor misrepresented his land as to its agricultural qualities.

2. **Exchange of property** ⬤═8(4)—**Fraud in exchange is shown by promise of grantor to convey free of vendor's lien and his executing deed retaining lien (Rev. St. 1925, art. 4004).**

Under Rev. St. 1925, art. 4004, fraud in exchange of property is shown by grantor's agreement to convey free of vendor's lien and his execution of deed retaining such lien.

3. **Homestead** ⬤═123—**Wife's right to avoid conveyance of homestead for fraud of grantee is not waived by husband's unauthorized acts.**

Husband cannot, by unauthorized acts, waive wife's rights to avoid their deed of their homestead for fraud of the grantee in exchange of properties.

4. **Homestead** ⬤═133—**Waiver of grantor wife held not shown, as matter of law, in suit to avoid deed of homestead for grantee's fraud.**

Evidence in suit to avoid deed of homestead for fraud of grantee *held* not to show, as matter of law, waiver by grantor wife.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by R. J. Graham and wife against Clinton Apple. From judgment on verdict directed for defendant, plaintiffs appeal. Reversed and remanded.

Hoover, Hoover & Willis, of Canadian, and J. W. Payne, of Perryton, for appellants.

R. T. Correll, of Perryton, and Frank Willis, of Amarillo, for appellee.

HALL, C. J. The appellants, Graham and wife, brought this suit for the rescission of a contract for the exchange of lands and for cancellation of their deed to the appellee, Apple, alleging that they had conveyed their homestead in the town of Canadian for a certain piece of farming land and a lease of additional lands adjacent thereto, and had executed promissory notes for the difference in the value of the respective premises. They alleged that, in order to induce the exchange, the defendant, Apple, fraudulently made material representations: (1) That the land which appellants were getting in exchange would grow anything, and raise a good crop, and was good farming land; (2) that it was agreed and represented by appellee that he would reserve no lien upon the land traded to appellants to secure the unpaid purchase money, which they were to owe, that such representations were false in that the land was broken, chalky, hilly land and unfit for farming, that it would not grow a good crop, and that the deed which appellee gave them contained without their knowledge, a vendor's lien to secure the balance of the purchase money due appellee.

The appellee answered that on or about the 30th day of December, 1922, he sold appellants the west 160 acres out of section No. 48 in block 13, in Ochiltree county, for a consideration of $20 per acre, and at the same time leased to them section 50, in the same block, for a period of three years, for a rental of $225 per year, and, as part payment, appellants conveyed lots 11, 12, 13, and 14 in block No. 6, in the Southside addition to the town of Canadian, at an estimated value of $1,700; that appellants inspected the land which they received in exchange before the consummation of the deal; that the conveyances executed in closing the exchange were prepared in strict accordance with the terms of sale agreed upon between the parties; that appellants entered into possession of the land sold and leased to them, lived upon, and cultivated the same during the season of 1923, and, in the month of December, 1923, with full knowledge of all matters connected with the deal, ratified the contract of sale, treated the notes given for the balance of the purchase price as valid, subsisting obligations, made no claim of fraud or misrepresentation, but, on the contrary, requested an extension of time in which to pay the notes; that in the fall of 1923, appellants leased to a party the land so purchased by them, thereby ratifying said sale, and because of their said acts they had waived their right of rescission, if any they ever had, which was expressly denied.

The appellants did not sue for damages, but rested their action solely upon a right to rescind.

The case was tried to a jury, but the trial court, being of the opinion that the appellants' testimony supported the allegations in the appellee's answer, directed a verdict for appellee. From a judgment entered upon such verdict, this appeal is prosecuted.

It appears that the deed which appellee executed to the appellants retained a vendor's lien to secure the unpaid purchase money which is represented by vendor's lien notes. There is positive testimony in the record to the effect that there was a deficiency in the amount of cultivated land upon each of the tracts, and that this land was of an inferior grade, unsuited for agriculture, and adapted only for grazing purposes. The testimony of Graham shows that he was a machinist, and had followed that occupation for about 35 years, and was working for the railroad company in Canadian prior to the

date of the exchange. He further testified that he could not read or write very well, and did not understand what was meant by a vendor's lien.

It is provided by R. S. article 4004, that actionable fraud in this state, with regard to transactions in real estate, shall consist of either a false representation of a past or existing fact, or a false promise to do some act in the future, which is made as a material inducement to another party to enter into a contract, and but for which promise said party would not have contracted. The article further provides:

"Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or some equitable reason."

[1] Applying the provisions of this statute to the facts as shown by the appellants' testimony, fraud must be presumed if the land as to its agricultural qualities was misrepresented, and fraud is shown if it is true that appellee agreed to convey the premises free of the vendor's lien, and no equitable reason is set up by the appellee why such presumption should not obtain. The defense presented is one of ratification or waiver of the fraud by the subsequent acts and conduct of the appellants. We have reviewed the statement of facts and think the testimony was sufficient to have required the court to submit the issue of waiver to the jury, at least, as to the wife.

[2, 3] It is held in Cotton v. Morrison (Tex. Civ. App.) 140 S. W. 114; Id. (Tex. Civ. App.) 152 S. W. 866, that a husband cannot, by subsequent acts, unauthorized by the wife, validate a conveyance of the homestead, voidable on the ground of the grantee's fraud practiced on the husband and wife joining in the conveyance. Whatever may have been the finding of the jury on the issue of waiver of fraud by Graham in residing upon the land and cultivating it for one year, and in asking for an extension of time for the payment of the notes, and in leasing the property to Drake, the court was not warranted in holding, as a matter of law, that Mrs. Graham had waived the fraud through which she had been deprived of her homestead. Her husband had the right to fix the place of domicile of the family in the absence of any charge that, in the exercise of such right, he was perpetrating a fraud upon his wife. He could remain on the land for one year and endeavor to farm it. He could then lease the land without his wife's consent, and move temporarily to Kansas City, and resume his occupation as a machinist without her consent, if it seemed best to him to do so, and it resulted in no fraud upon his wife's rights.

She testified, with reference to the transaction, as follows:

"With reference to our homestead we traded to Mr. Apple, up to the time this lease of the land was made to Mr. Drake, and before we moved off the land, I did not, as a wife and former owner of the homestead, ever discover the worthlessness of this land for farming, as to what it had been in prior years up to the time we moved off the land. But it was after Mr. Graham and I had left the land and began to travel through the country and talk to other people. I had no intention whatever of ratifying or confirming this trade, if I had known of these facts, and would not have leased the land, had I known the true facts. We lived on the place from the 28th of March until the 16th of November, about nine or ten months. I did not see the crop that was raised on the land for I could not go up there and see it. I know he raised a little Kaffir corn. I think he can tell you how much, but we did not raise anything on the place where we lived. I knew in November, 1923, that we had not raised anything, and I guess I also knew that we were leasing the place to Mr. Drake for the following year, but I did not have anything to say about my husband leasing the place—women don't very often have anything to say—I guess I knew it was being done all right, and I don't suppose I objected to it, because we had to go away from there to make something. I do know there had been no crop raised on the land that year, and also about the place being leased to Mr. Drake for the next year, and I guess I made no objection to. it, but we did not know anything about that place until after we left and other people told us."

[4] Under this testimony, we think the court was not warranted in directing a verdict for the appellee. Dashiell v. Johnson, 99 Tex. 546, 91 S. W. 1085; Speers Law of Marital Rights, §§ 403, 410; Cotton v. Morrison, supra.

The judgment is reversed, and the cause remanded.