## MARTINI v. POWER BANKING CO.

### No. 12374.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 1, 1930.

Rehearing Denied Dec. 6, 1930.

James V. Allred and Carrigan, King & Surles, all of Wichita Falls, for appellant.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

CONNER, C. J.

The pleadings in this case in their final form recite that on the 26th day of August, 1919, the defendant N. Martini and his father, Jacob Martini, Sr., negotiated a loan from the plaintiff herein, who was then operating a banking company known as the Archer Banking Company, and to which N. Martini and Jacob Martini, Sr., executed their joint and several promissory note, due February 25, 1920, bearing interest at the rate of 10 per cent. per annum from maturity un-

til paid, and providing for 10 per cent. interest, if sued upon or placed in the hands of an attorney for collection. This note was renewed and extended on the 25th day of February, 1920, by the execution of a new note in the sum of $8,141.26, due August 24, 1920; and that said indebtedness with interest was continued in existence by successive renewals and additional money from time to time advanced until the sums so advanced by the plaintiff to the defendants, N. Martini and Jacob Martini, Sr., aggregated the principal sum of $14,113.64, for which, on March 20, 1925, N. Martini and Jacob Martini, Sr., executed to the plaintiff a renewal and extension note in the above amount due 6 months after date, payable to the order of the Power Banking Company, which company had succeeded to the Archer Banking Company, composed of the same identical parties, F. M. Power and H. A. Power, there being no other change in the company other than the change of name. This note also provided for interest from date at the rate of 10 per cent. per annum until paid, and contained the usual 10 per cent. attorney's fee clause. Said note also provided that the makers and indorsers waive protest, demand and notice of protest and nonpayment in case the note was not paid at maturity, and agreed to all extensions and partial payments before or after maturity without prejudice to the holder. All the indebtedness which accrued on the 26th day of August, 1919, was evidenced by notes similar to the first note executed.

Jacob Martini died on the 1st day of January, 1929, leaving a will which has been admitted to probate, in which he named Jacob Martini, Jr., his son, as his sole executor.

The plaintiff filed its suit against N. Martini and Jacob Martini, Jr., sole executor, on the 13th day of August, 1929, seeking to recover the indebtedness evidenced by the notes mentioned.

N. Martini failed to answer, but Jacob Martini, Jr., the executor, answered by a general denial, a general demurrer, and specially pleaded, as against all notes mentioned in the petition except the original, failure of consideration, forgery, and the 2 and 4 year statute of limitation.

To the said answer of defendant, plaintiff, by supplemental petition, again pleaded the original indebtedness and continued renewals until the 20th of March, 1925, at which time it was alleged that N. Martini and Jacob Martini, Sr., were indebted in the said sum of $14,113.63; for which on that date they executed to the plaintiff their joint and several promissory note in this amount, that N. Martini, acting for himself and his father, advised the plaintiff that they desired to extend the note, and thereupon the plaintiff

prepared and delivered to N. Martini the form of renewal note to be executed by him and his father, Jacob Martini, Sr., and that N. Martini represented that he did secure his father's signature thereto, and did on the date above named deliver to the plaintiff the renewal note in the sum of $14,113.64, which was accepted by plaintiff with the belief that it was the genuine note of Jacob Martini, Sr., and that, if he did not execute the same and authorize its execution, then said renewal note was forged by N. Martini, and deception and fraud was practiced upon the plaintiff, which had no way or means of discovering said deception and fraud, and which did not discover the same.

Plaintiff further pleaded that, if any of the renewals were forgeries, as charged by the defendant, they were nevertheless evidences of a valid indebtedness against Jacob Martini, and were forgeries concealed from him and without its knowledge or consent.

The case was submitted to a jury upon special issues, which, together with the jury's answers, were as follows:

"1. Do you find from a preponderance of the evidence that Jacob Martini, Senior, signed the note introduced in evidence dated March 20, 1925? Answer as you find the facts to be. Answer. Yes.

"2. If you have answered special issue No. 1 Yes, you need not answer any of the following issues, but if you have answered said issue No, then you will answer the following issue: Do you find from a preponderance of the evidence that Jacob Martini, Senior, signed any of the other notes introduced in evidence? Answer as you find the facts to be. Answer: ———.

"3. If you have answered special issue No. 2 yes, then you will answer the following special issue: From a preponderance of the evidence find on what date the plaintiff could by the use of reasonable diligence have discovered that such notes or any of them were forgeries, if any of them were forgeries. Answer as you find the facts to be. Answer: ———.

" 'Reasonable diligence,' as that term is used in special issue No. 3, means that degree of diligence that an ordinary prudent person would have used or exercised in the same or similar circumstances."

Upon the verdict of the jury, judgment was rendered for the plaintiff as prayed for, to which judgment defendant excepted and has duly prosecuted this appeal.

We find no error in the action of the court in permitting the witnesses Morris and Purcell to take in hand and examine the note of March 20, 1925, together with the renewal notes also specified in the petition. The exception to this action was to the effect that the renewal notes did not constitute a proper basis of comparison in the effort to prove the genuine signature of Jacob Martini, Sr., to the note of March 20, 1925. It is true the signature of Jacob Martini, Sr., to the renewal notes was not admitted to be genuine, and they could not be used as a basis of comparison in the effort to prove the signature to the note of March 20, 1925. See Campbell v. Campbell (Tex. Civ. App.) 215 S. W. 134; Hanley v. Gandy, 28 Tex. 211, 91 Am. Dec. 315; Eborn v. Zimpelman, 47 Tex. 503, 26 Am. Rep. 315; Jester v. Steiner, 86 Tex. 415, 25 S. W. 411. But the record fails to show that the renewal notes were either offered for the purpose, or used as a basis, of comparison. The witness Morris examined the note of March 20, 1925, and testified that he had been county commissioner and once county tax assessor for 6 years; that he knew Jacob Martini during his lifetime for some 23 years, and had various business transactions with him; that he was familiar with his signature from those business dealings, and in his opinion knew his signature; that in his judgment, from having seen him write and having had business dealings with him and being familiar with him, he would know his signature; that in his opinion the note dated March 20, 1925, in the sum of $14,133.64, payable 6 months after date to the Power Banking Company, and signed by N. Martini and Jacob Martini, "has the genuine signature of Jacob Martini, deceased." He also at the same time further examined the renewal notes dated February 25, 1920, August 24, 1920, February 16, 1921, and testified that in his opinion they all bore the genuine signature of Jacob Martini, deceased.

Purcell testified that he had been a bookkeeper for the Power Banking Company for about 8 years; that at first it was the Archer Banking Company, then it was the Power Banking Company; that during that time he had occasion to examine signatures, saw the signatures on all the checks cashed, and checks posted; that he was working for the Power Banking Company when a loan to N. Martini and Jacob Martini was being carried by the bank; that he knew nothing about the origin of the loan, as Mr. Power always attended to the loans himself; that he knew Jacob Martini, Sr., during his lifetime, and transacted business with and for him through the bank; that he cashed checks for him, and "I know his signature"; that he had known him a long time and was familiar with his signature; "I have seen him write his name on checks"; that "from my experience and my knowledge of Mr. Jacob Martini's signature gained through seeing him write and seeing him sign checks and cashing his checks and handling his business through the bank I would say those notes (plaintiff's Exhibits 6, 7, 8 and 9) bear the genuine signature of Jacob Martini, deceased."

The last will and codicil thereto of Jacob Martini, Sr., had been introduced, presumably as a basis for comparison, and his signature to both will and codicil was admitted to be genuine, but it will be observed that neither Morris nor Purcell referred to the signatures to the will and codicil, nor were they requested to do so in behalf of plaintiff for the purpose of comparing the signature to the will with that of the notes. It is to be further noted in this connection that the defendant had pleaded that all of the notes described in the plaintiff's petition, except the original one executed in 1919, were without consideration, and were forgeries and barred by limitation. And the theory of the plaintiff evidently was that, if the defendant succeeded in proving that the note of March 20, 1925, was a forgery, as pleaded, then the plaintiff might recover upon any one of the renewal notes proven to be genuine, and further proof that the fraud had been concealed by N. Martini and that plaintiff had been unable by an exercise of reasonable diligence to discover the fraud. All assignments of error involving the questions discussed are accordingly overruled.

The plaintiff introduced Frank M. Power as a witness who testified that the original note came into his hands in August, 1919; that their note register shows the entry, and that it was renewed from time to time until 1925; that in handling the last renewal in 1925 he made it out and mailed it, or handed it to Nick Martini; that he received it back through the mail in the condition it now is; that the note had never been paid. He thereupon was cross-examined by the defendant, and was handed the complaint signed and sworn to by the witness before the county attorney of Archer county, charging Nick Martini with the forgery of the note sued on, and testified that: "I swore that it was a forgery on the statements that he made to me. I got out a warrant for Nick Martini that this note that I now sue on here against the estate was a forgery and I went before the grand jury and had him indicted. I am now asking judgment against the estate on my theory that this is a genuine note of old man Martini's. I went before the county attorney and swore that it was a forgery on account of the fraud perpetrated on me. That money was deposited to Nick Martini and as far as I know Mr. Martini, Sr., never got a dime of it."

Thereupon the plaintiff again examined the witness, and he testified: "I made out this complaint because when I took it up with Nick Martini he told me it was a forgery. He told me the last note was forged. He said the other notes were genuine."

■ Appellant objected to the last sentence on the ground that the statement was hearsay, and error is assigned to the action of the court in overruling the objection. We think there can be no merit in this contention. A party question concerning a part of a transaction on cross-examination has a right on redirect examination to explain in detail the whole transaction. It is evident that appellant sought by his cross-examination to put Mr. Power in an embarrassing position before the court and jury by asking him if he had not sworn out a complaint against N. Martini for forgery on the note of March 20, 1925, and was then trying to hold the estate liable on the theory that the note was genuine. In the case of Yarborough v. Davis (Tex. App.) 15 S. W. 713, it was held by the court that, where a witness testified to a part of a transaction, the opposing party may on cross-examination bring out anything that happened during the time covered by the whole transaction. The same rule was announced in the case of M., K. & T. Ry. Co. v. Lindsey (Tex. Civ. App.) 101 S. W. 863. In the case of First National Bank v. Pearce (Tex. Civ. App.) 126 S. W. 285, it was stated by the court that a witness, put in a bad light before the jury by the development of testimony on cross-examination, may, by a pertinent explanation on re-examination, remove the unfavorable impression.

In the case of Cotton v. Morrison, 140 S. W. 114, 115, by this court, the question involved is fully discussed. We there cited and applied article 791 of our Code of Criminal Procedure 1895, which reads as follows:

"When part of an act, declaration or conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the court, as when a letter is read all of the letter on the same subject between the same parties may be given. And when a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration, or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

Moreover, the verdict and judgment rest alone on the note of March 20, 1925, and we fail to find that the statement objected to constitutes prejudicial error. The assignments and propositions relating to this matter must be overruled.

■ The concluding question presented by appellant's assignment of error questions the sufficiency of the evidence to sustain the verdict of the jury on issue No. 1. In addition to the testimony of witnesses Morris and Purcell, C. E. Goodwin testified that he was sheriff and tax collector, and had been for 11 years; that, in addition to being sheriff and tax collector, he had worked in the office for about 18 or 20 years collecting taxes from taxpayers over the county; that he knew Jacob Martini during his lifetime. "I knew him well. I have cashed lots of checks for him. I have seen him write lots of times. Having seen Jacob Martini write and know-

ing his signature, I think all of them (the notes) bear his signature. That is my opinion."

On cross-examination he was asked to compare the signatures of the will and codicil, and he pronounced them genuine in his opinion, and in a general way saw only a minor difference, and that he thought that Jacob Martini signed the notes dated February 25, 1920, August 24, 1920, and February 16, 1921.

Harve Power, a member of the firm of Power Banking Company, testified that the note register kept by him showed that the original note in the sum of $7,814.32 came into the bank on August 26, 1919, and was renewed on March 5, 1920 for $8,141.26, and again renewed on September 27, 1920, for $8,569.73, and again renewed on February 26, 1921, for $8,867.29, and again renewed on August 23, 1921, for $9,589.19, and again renewed on March 11, 1922, for $10,096.78, and again renewed on September 23, 1922, for $10,630.56, and again on September 22, 1923, in the amount of $12,702.53; that the next and last renewal was on March 20, 1925, in the amount of $14,113.64; that the book in which these entries were made and from which he was reading was the book in which the bank kept the original entries of notes in the bank.

In behalf of defendant, a Mr. P. J. Hays testified that he lived in Archer City for ten years, and was a banker by occupation; that as a banker it was part of his duty to observe signatures to instruments; that he had observed checks, the validity of checks; that he had had about 20 years' experience in that as cashier in the bank; that he knew Jacob Martini during his lifetime; that he was an old man; that he had examined the two admitted signatures of Jacob Martini to his will and codicil; that in his opinion the same hand wrote them both; that in his opinion, if Jacob Martini wrote the signatures to his will, then it is not his signature to note dated March 20, 1925; that he did not think there was any similarity at all in the writing between the signatures appearing on the will and those appearing on the note. On cross-examination he testified that he was "testifying solely on comparison of handwriting."

John P. Fleming testified on behalf of defendant that he was cashier of the Power State Bank; that he had been in the banking business about 23 years, acting as assistant cashier and cashier; that he knew Jacob Martini during his lifetime; had seen him sign his name and was acquainted with his signature; that the two signatures to his will are his signatures; that he had examined the note dated March 20, 1925, and in his opinion Jacob Martini, deceased, did not sign that note. The witness pointed out a

number of differences in the signatures. On cross-examination by the plaintiff, however, he testified that in his opinion the renewal notes signed February 25, 1920, and August 24, 1920, were signed by Jacob Martini, deceased.

We conclude that the evidence presents a conflict in testimony, which, under settled rules of law, was for the jury.

All assignments of error are accordingly overruled, and the judgment below is affirmed.